STATE OF NEBRASKA, APPELLEE, V.
TYRONE NEWMAN, APPELLANT.

559 N.W.2d 764

Filed January 7, 1997.    No. A-96-137.

William L. Binkard for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Tyrone Newman appeals his jury convictions for first degree sexual assault and first degree false imprisonment and the sentences imposed by the district court for Dakota County. For the reasons set forth below, we affirm Newman's conviction for first degree sexual assault and the sentence imposed upon Newman on that conviction. Newman's conviction for first degree false imprisonment is reversed, and his sentence on that conviction is vacated.

## FACTS

Following an incident which took place on February 19, 1995, Newman was charged by information with kidnapping, sexual assault in the first degree, and robbery. The victim was Newman's estranged wife. At trial, the victim testified that earlier in the day she and Newman had been discussing their impending divorce. Newman telephoned her at her home around 5:30 p.m., asking for a ride to work. Although she initially refused, the victim eventually took Newman to the IBP plant. Newman asked that the victim wait for him for a few minutes. He returned to the car, stating that he did not have to work and that he wanted to return home with the victim.

The victim testified that Newman stated that he "want[ed] to spend time with [the victim]," a phrase interpreted by the victim as Newman's indication that he wanted to have sex. The victim testified that she did not want Newman to come home with her and that she instead drove around for a while so that they could talk. She testified that as she drove, Newman grabbed the steering wheel in an attempt to pull the car over. After the victim stopped the car, Newman snatched the keys and hit the victim. Following a struggle, the victim drove Newman to her home.

After the two were inside the victim's home, Newman made sure all the doors were closed and refused to allow the victim to

turn the lights on in the house. The victim testified that she attempted to go to the home of neighbors, but that Newman grabbed her arm several times and refused to let her leave. She stated that the two began arguing and that the argument escalated into a physical confrontation in which Newman pulled the victim's hair, slapped and punched her in the face, and kicked her. The victim stated that the confrontation occurred throughout several rooms in the house, that Newman continued to hit and kick her, and that he pushed her to the kitchen floor, eventually holding her down by her neck.

The victim testified that after Newman had knocked her to the floor, he ripped her bra, pushed aside her shorts, and engaged in intercourse with her. The victim stated that she was crying and repeatedly told Newman "no" and that she did not want to have sex with him, but that he responded by telling her that he would kill her if she did not keep quiet.

The victim stated that she drove Newman back to work, and she then drove to the home of her neighbor, Marjorie Peterson.

Peterson testified that the victim came in the door and was screaming, crying, and hysterical. Over defense counsel's hearsay objection, Peterson was allowed to testify that the victim stated, "I don't know why he had to rape me. Marge, he hurt me bad. I don't know why he had to do it to me." Peterson also testified that the victim's cheek was red, she had marks on her neck and arm, her bra was ripped, and there were scratches on her breast.

The jury was allowed, without objection, to view a videotape of the victim's police station interview in which she recounted the incident to police officers. There is an indication in the record that portions of the videotape were not shown to the jury. At the close of the State's case, Newman moved for a directed verdict on all three counts. The motion was granted with respect to the robbery charge.

In his defense, Newman testified that the victim had instructed him to call her so that she could give him a ride to work. He stated that she asked him if he could get time off to spend with her. Newman testified that they returned to the victim's home after he checked in at work and that they "wound up

making love." Newman denied striking the victim or forcing her to "make love."

The jury was charged on the elements of kidnapping and further instructed that if it found Newman not guilty of kidnapping, it should consider whether Newman committed first degree false imprisonment. The jury received an instruction on first degree sexual assault.

The jury convicted Newman of false imprisonment and of first degree sexual assault. He was given sentences of 2 to 5 years' imprisonment on the conviction of false imprisonment and of 5 to 10 years' imprisonment on the conviction of sexual assault, to be served concurrently, with credit given for time served of 339 days. Newman appeals.

## ASSIGNMENTS OF ERROR

Summarized and restated, Newman claims the following errors in his brief: (1) The State failed to prove each of the elements of the charges alleged against Newman, and the evidence does not support Newman's convictions; (2) Newman was not provided with effective assistance of counsel at trial; (3) the admission of the videotape of the victim's police station interview was plain error because the videotape is hearsay; (4) Peterson's testimony as to the victim's statements was inadmissible hearsay; (5) the jury instruction relating to false imprisonment should have provided that it was a lesser-included offense of first degree sexual assault; and (6) the sentences imposed were excessive.

## ANALYSIS

*Sufficiency of Evidence.*

Newman claims that each element of false imprisonment and sexual assault was not proved beyond a reasonable doubt. For his argument, Newman states that "the appellate court should review the entire Bill of Exceptions and conclude that not all of the requisite elements of the crimes [charged] have been proven beyond a reasonable doubt." Brief for appellant at 7. Newman does not direct our attention to a specific element lacking proof.

Newman was charged by information with kidnapping, first degree sexual assault, and robbery. The robbery charge was dismissed during the course of the trial.

*First Degree Sexual Assault: Adequacy of Evidence.*

Neb. Rev. Stat. § 28-319(1) (Cum. Supp. 1994), in effect at the relevant time, provided that a person is guilty of first degree sexual assault if he subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception; (b) knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct; or (c) the actor is 19 years of age or older and the victim is less than 16 years of age. The record shows that the victim in this case testified that she was forced to have intercourse with Newman despite her continued objections. She stated that she was hit, punched, and kicked, and that when she cried, Newman threatened to kill her if she did not keep quiet. There is clearly sufficient evidence of the elements of sexual penetration, force, and threat of force to support the conviction of first degree sexual assault.

*First Degree False Imprisonment: Plain Error.*

Newman claims that the evidence was insufficient to support his conviction for first degree false imprisonment. We need not address the issue as posed, since we find plain error in connection with the conviction for first degree false imprisonment due to an improper variation between the crime charged in the information and the crime of which Newman was convicted.

◼ Plain error is that error which was not complained of at trial but is plainly evident from the record and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial system. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

◼ An appellate court always reserves the right to note plain error. *State v. Hall*, 249 Neb. 376, 543 N.W.2d 462 (1996). Newman's conviction for first degree false imprisonment, a crime with which he was not charged, and which is not a lesser-

included offense of the crime of kidnapping with which he was charged, was plain error.

Newman was charged by information with kidnapping, in violation of Neb. Rev. Stat. § 28-313 (Reissue 1995). According to § 28-313, a person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to, inter alia, terrorize him or a third person or commit a felony.

Newman was not, however, charged in the information with first degree false imprisonment. The information was not amended to include a charge of first degree false imprisonment. Neb. Rev. Stat. § 28-314 (Reissue 1995) states that a person commits false imprisonment in the first degree if he knowingly restrains another person under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury. "Restrain" is defined as "to restrict a person's movement in such a manner as to interfere substantially with his liberty." Neb. Rev. Stat. § 28-312(1) (Reissue 1995).

Generally, to charge the defendant with the commission of a criminal offense, an information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute or in language equivalent to the statutory terms defining the crime charged. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994). The purpose of an information is to inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also so that he may be able to plead the judgment rendered thereon as a bar to later prosecution for the same offense. *Id.*

The law is well settled that where an information charges one crime, a defendant may be convicted of a lesser-included offense. See, e.g., *State v. George*, 3 Neb. App. 354, 527 N.W.2d 638 (1995). Also, an information may be amended to include a lesser-included offense during trial and prior to submission to the jury. See *State v. Wiemer*, 3 Neb. App. 821, 533 N.W.2d 122 (1995). To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Long*, 4 Neb. App. 126, 539 N.W.2d 443

(1995). A review of the elements of first degree false imprisonment compared to the elements of kidnapping shows that first degree false imprisonment is not a lesser-included offense of kidnapping. The trial court's charge which permitted a finding of guilt of first degree false imprisonment if the jury found Newman not guilty of kidnapping and Newman's consequent conviction of first degree false imprisonment are plain error. The conviction on count I is reversed, and the sentence on count I is vacated.

*Lesser-Included Offense.*

Newman argues that false imprisonment is a lesser-included offense of first degree sexual assault because a forcible sexual assault cannot occur absent a restraining of the victim without legal authority. Because Newman's conviction for first degree false imprisonment is reversed, we need not address his argument.

*Testimony of Neighbor.*

■ Newman assigns as error, but does not discuss in his brief, the admission of Peterson's testimony regarding the victim's statements after the incident. Ordinarily, to be considered by an appellate court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

Peterson's testimony, as set forth above, was objected to as hearsay at trial. The prosecutor responded to the objection by stating, "No, it's not, Your Honor. [The victim] has testified." The trial court then overruled Newman's hearsay objection.

■ The State argues on appeal that the victim's statements were admissible as an excited utterance. "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Neb. Rev. Stat. § 27-803(1) (Reissue 1995). For a statement to qualify as an excited utterance, the following criteria must be met: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant

while under the stress of the event. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994).

Granting that the first two elements of the exception are met, i.e., there was a startling event and the victim's statements related to the event, the issue is whether the victim's statements were made while under the stress of the event.

> For hearsay to be admissible under the excited utterance exception, "[s]tatements need not be made contemporaneously with the exciting cause but 'may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated.'" *State v. Jacob*, 242 Neb. at 188, 494 N.W.2d at 118 (quoting 6 John H. Wigmore, Evidence in Trials at Common Law § 1750 (James H. Chadbourn rev. 1976)). "[T]he key requirement is spontaneity, a showing that the statement was made without time for conscious reflection." *State v. Boppre*, 243 Neb. 908, 927, 503 N.W.2d 526, 538 (1993). Accord, *State v. Jacob, supra*; *In re Interest of D.P.Y. and J.L.Y.*, [239 Neb. 647, 477 N.W.2d 573 (1991)]; *State v. Plant*, [236 Neb. 317, 461 N.W.2d 253 (1990)]. However, the time interval between the startling event and the statements in question is not "of itself dispositive of the spontaneity issue." *State v. Boppre*, 243 Neb. at 927, 503 N.W.2d at 538. Accord, *In re Interest of D.P.Y. and J.L.Y., supra*; *State v. Roy*, 214 Neb. 204, 333 N.W.2d 398 (1983). The permissible length of time between the statement and the startling event is determined on the unique facts of each case. *State v. Boppre, supra*; *State v. Jacob, supra*.

*State v. Tlamka*, 244 Neb. 670, 676-77, 508 N.W.2d 846, 850-51 (1993), *questioned on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996).

The victim testified that she drove Newman back to his workplace, and then, upon her return home, she went to her neighbor's home. The record does not reflect the distance between the victim's home and Newman's workplace or the passage of time between the assault and the challenged statement. Peterson testified that the victim "come [sic] in the door screaming and crying and — and she was just all hysterical." At that point, the

victim made the statements to Peterson that are at issue on this appeal.

In *State v. Tlamka*, 244 Neb. at 677, 508 N.W.2d at 851, the Nebraska Supreme Court indicated:

> As stated in *State v. Plant*, 236 Neb. 317, 329, 461 N.W.2d 253, 264 (1990): "While it is not necessary to show that the declarant was visibly excited in order to qualify under the excited utterance exception, [citations omitted], a declarant's nervous state is relevant to the issue of whether the statement was made by the declarant while under the stress of the event." " ' "[T]he true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue . . . ." ' " *State v. Jacob*, 242 Neb. 176, 188, 494 N.W.2d 109, 118 (1993) (quoting 6 Wigmore, *supra*, § 1745).

The victim arrived at Peterson's home directly after driving Newman back to his workplace. Peterson testified that the victim was crying, screaming, and hysterical. Under the unique facts of this case, we think that the victim was speaking under the stress of nervous excitement and shock produced by the incident with Newman. The victim's statements to Peterson come within the "excited utterance" exception to the hearsay rule, and their admission was not plain error.

*Admission of Videotape and Ineffectiveness of Trial Counsel.*

Newman points to the admission into evidence, without objection, of the videotaped police station interview of the victim. Newman asserts that admission of the videotape was in violation of the hearsay rule. Newman argues that admission of the videotape was plain error and that his trial counsel's representation was ineffective. The State does not argue that the videotaped interview was properly admitted into evidence; rather, the State argues that Newman suffered no prejudice because the information contained in the videotape was cumulative to the victim's trial testimony.

Ordinarily, for error to be predicated on the admission of evidence, there must be a timely objection made at trial. Neb. Rev. Stat. § 27-103 (Reissue 1995); *State v. Martinez*, 4 Neb. App. 192, 541 N.W.2d 406 (1995), *aff'd* 250 Neb. 597, 550 N.W.2d 655 (1996). It is undisputed that no objection was made to the admission of the videotape by trial counsel. However, the failure to object could be explained by trial strategy rather than by lack of effectiveness. The decision to object or not to object is part of the trial strategy, and an appellate court gives due deference to counsel's discretion in formulating trial tactics. *State v. Lieberman*, 222 Neb. 95, 382 N.W.2d 330 (1986). Defense counsel could have concluded that the videotape would be admitted as cumulative to the victim's account or otherwise and, therefore, rather than prolonging or accentuating the obvious, chosen not to object. See *State v. Wickline*, 241 Neb. 488, 488 N.W.2d 581 (1992). Under the facts of this case, we, therefore, proceed to consider the errors regarding the videotape to the extent permitted by the record.

The erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995). In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *Id*. The erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and if other relevant evidence, properly admitted, supports the finding by the trier of fact. *Id*.

The videotaped interview with the victim took place around 9 p.m. on the evening of the incident. In the videotape, the victim describes the incident and, to some extent, matters surrounding the couple's stormy relationship and Newman's personal history not directly pertaining to the incident. Thus, it appears that the tape contains statements not otherwise in evidence, some of which could be prejudicial to Newman. Specifically, the victim mentions that her separation from Newman initially resulted from Newman's imprisonment, that Newman is afraid of going back to prison, that Newman now

resides at the "Release Center," that the victim had told Newman's parole officer that the victim did not want Newman to return home because the victim feared that Newman would be back on drugs, that Newman had at one time been on probation in California, and that he came to the area "thinking he could run some drugs."

Newman claims that the admission of the videotape was plain error or that because his trial counsel did not object to its admission, its admission demonstrates ineffectiveness of trial counsel. As noted below, we cannot tell on the record presented to us which portions of the videotape were shown to the jury, and we, therefore, cannot assess Newman's appellate claims pertaining to the videotape.

The Nebraska Supreme Court has stated:

> To state a claim of ineffective assistance of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a conviction, a defendant must show that his or her counsel's performance was deficient and that such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

*State v. Dawn*, 246 Neb. 384, 392-93, 519 N.W.2d 249, 255-56 (1994).

Claims of ineffective assistance of counsel raised for the first time on appeal, as is the case here, do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. See *id.* An appellate court will not address the matter on direct appeal when the issue has not been raised or ruled on at the trial court level "*and the matter necessitates an evidentiary hearing.*" (Emphasis in original.) *Id.* at 393, 519 N.W.2d at 256.

The record before this court is insufficient to adequately review the question of effectiveness of counsel. The record at trial reflects the following statements by the trial judge to the jury before the tape was viewed:

> At this time we are going to view a videotape approximately 18 minutes long. The attorneys will be operating

the controls of the videotape — of the VCR. There are certain portions that the parties have stipulated that should be muted out, that are not relevant to the issues in this case. And so when we've reached those points the attorneys will be muting the VCR and you will not be able to hear whatever is going on on the tape. They're not trying to hide anything from you. It's just that it's not relevant to this case and it could be confusing and could cause problems with the case. So they have agreed to eliminate those portions. Okay.

The court's comments quoted above do not state which portions of the videotape were eliminated, nor do the attorneys state on the record which portions are in evidence and which portions are excluded or why. For the sake of completeness, we note that there is a handwritten piece of paper, located at the back of volume IV of the bill of exceptions, which may correspond to the excluded material. This paper is not described in the record, much less identified as an exhibit. Its significance is ambiguous. Thus, the record fails to conclusively establish which portions of the videotape were muted out, and we are unable to ascertain whether the victim's statements referring to Newman's possible drug use and to his prior incarcerations and involvements with the penal system which may be problematic were heard by the jury.

Keeping in mind that we are being asked to review the claim for plain error or the ineffectiveness of counsel on direct appeal, we are unable to evaluate Newman's claim that the videotape was so prejudicial as to require reversal or that his trial counsel's performance was ineffective by allowing the jury to view the tape. It is incumbent on an appellant to present to the appellate court a record which supports the errors assigned; absent such a record, the decision of the lower court will generally be affirmed. *Sabrina W. v. Willman*, 4 Neb. App. 149, 540 N.W.2d 364 (1995). Newman has not supplied us with a record which supports his claim. Because the issue of ineffective assistance of counsel at the trial level was not raised or ruled on by the trial court and the matter necessitates an evidentiary hearing, the matter will not be further addressed on appeal. See

*State v. Dawn, supra.* In the absence of an adequate record, we cannot say that the admission of the videotape was error.

Newman also argues that his trial counsel was ineffective for failing to point out to the trial court at sentencing that Newman's conviction was actually for second degree false imprisonment and that his trial counsel was ineffective for failing to ask that the jury be instructed that second degree false imprisonment is a lesser-included offense of first degree sexual assault. Based on our reversal of the first degree false imprisonment conviction, there is no merit to these arguments.

*Excessive Sentences.*

Newman was sentenced to 2 to 5 years' imprisonment on the conviction of false imprisonment, a Class IV felony, and to 5 to 10 years' imprisonment on the conviction of first degree sexual assault, a Class II felony. The sentences were ordered to be served concurrently. Newman argues that the sentences are excessive given his employment, educational, and family background.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995). In imposing sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his criminal record or past law-abiding conduct, the motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995).

Newman's presentence investigation report indicates that he has prior convictions for burglary, robbery, and theft. The robbery and theft convictions stemmed from an incident in Iowa in which Newman robbed a postal employee after indicating that he had a gun. Given his criminal record and the fact that his current conviction involved extreme violence in which the victim was beaten, threatened with death, and sexually assaulted, his sentence for first degree sexual assault, which is within the statutory limits, is not excessive.

Because Newman's conviction on the false imprisonment charge is reversed, his sentence on that charge is vacated.

JUDGMENT ON COUNT I REVERSED, AND SENTENCE VACATED.

JUDGMENT ON COUNT II AFFIRMED.