STATE OF NEBRASKA, APPELLEE, V.
ORESTES SANCHEZ-LAHORA, APPELLANT.
616 N.W. 2d 810

Filed September 12, 2000. No. A-99-1129.

Nicholas D. Valle, of Langvardt & Valle, P.C., for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HANNON, INBODY, and CARLSON, Judges.

HANNON, Judge.

## INTRODUCTION

Orestes Sanchez-Lahora was convicted of first degree sexual assault and terroristic threats and was sentenced to consecutive sentences of 10 to 15 years' and 1 to 3 years' imprisonment, respectively. The defendant now appeals, alleging that the trial court erred in (1) excluding evidence of the alleged prior sexual relationship between the defendant and the victim, (2) failing to grant immunity to a defense witness, (3) forcing the defendant to testify with regard to a prior inconsistent statement made by the defendant while on the stand, (4) permitting rebuttal evidence from a witness not listed on the information, and (5) admitting the testimony of the rebuttal witness as to what the victim told the witness the morning of the assault. The defendant also alleges that the evidence did not support the jury's verdicts and that the trial court imposed excessive sentences. We find that (1) the trial court improperly excluded the defendant's testimony of his claimed prior sexual relationship with the victim, (2) the trial court was without authority to grant the defense witness immunity, (3) the defendant waived his right against self-incrimination when he took the stand, (4) the State need not list rebuttal witnesses on the information, (5) the victim's statements to the rebuttal witness on the morning of the assault qualified as an excited utterance, and (6) the evidence was sufficient to support the verdicts. Accordingly, we reverse, and remand for a new trial.

## PROCEDURAL BACKGROUND

On January 5, 1999, the State charged the defendant by information with count I, first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319(1) (Reissue 1995); count II, use of a weapon to commit a felony pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 1995); and count III, terroristic threats pursuant to

Neb. Rev. Stat. § 28-311.01 (Reissue 1995), for events occurring on or about November 6, 1998, in Hastings, Nebraska. The defendant claimed that he and the victim engaged in consensual sex on November 6 and that he and the victim had been engaging in a sexual relationship for several months prior to that date. Arguing that this history related to the issue of consent on November 6, the defendant moved for an in camera hearing pursuant to Neb. Rev. Stat. § 28-321 (Reissue 1995) in order to offer at trial the evidence of the victim's prior sexual relationship with him.

At the in camera hearing and after a formal waiver of his right to remain silent, the defendant testified that he had met the victim several months before November 6, 1998. He stated that they developed a friendship which eventually evolved into a secret sexual relationship. The defendant estimated that they had sexual intercourse 11 to 14 times in various locations, including his apartment, prior to November 6. According to the defendant, he and the victim concealed this relationship from the victim's boyfriend. The defendant admitted to having sexual intercourse with the victim on November 6, but he asserted that she participated voluntarily.

On cross-examination, the State inquired into the defendant's relationship with Scott Kinney and Jamie Sund, the two witnesses whom the defendant testified to as having known of his relationship with the victim. The defendant's counsel objected to the testimony as being beyond the scope of direct examination. The trial court overruled the objection upon the State's explanation that Kinney was "under" the defendant in the distribution of illicit drugs, a hierarchy which the State believed bore on Kinney's credibility and bias. The State then asked the defendant if he and Kinney were involved in the distribution of illegal drugs. The defendant's counsel objected on relevancy, but the trial court overruled the objection, pointing out, however, that the State could not prosecute him if he admitted to it. The State agreed, and the defendant answered that he and Kinney were involved in the distribution of illegal drugs in Hastings.

The defendant also testified that he told two other witnesses about his sexual relationship with the victim; however, he could not provide information on their whereabouts. He further stated

that his neighbor knew of his relationship with the victim, but the neighbor did not testify at the in camera hearing.

At this point, the defendant's counsel recognized that he had a conflict of interest in the case because he also represented Kinney in another matter. Accordingly, new counsel was appointed, and the in camera hearing was concluded 1 week later. With new counsel, the defendant called Kinney to the stand. Kinney testified that he knew the defendant and the victim, but he refused to answer further questions based on his Fifth Amendment right against self-incrimination. The defendant called no further witnesses, and the State moved to overrule the defendant's motion to introduce evidence of his alleged relationship with the victim because the evidence presented at the in camera hearing was insufficient to meet his burden of proof under § 28-321. On May 11, 1999, the trial judge signed a journal entry finding that the "defendant did not meet the standard set out in Neb. Rev. Stat. 28-321(2)(b)" and overruled the motion.

On May 18, 1999, the defendant made a motion for reconsideration of the trial court's decision and included an accompanying motion for a grant of immunity to Kinney. A hearing was held on May 21. In support of his requests, the defendant submitted the affidavits of himself and his counsel. His counsel's affidavit stated that he had met with Kinney and that Kinney had admitted seeing the victim at the defendant's apartment on several occasions prior to November 6 and had observed the victim perform a "striptease" for the defendant. Kinney also stated that the victim was known to exchange sexual favors for controlled substances. The defendant's affidavit stated that he had sexual relations with the victim before November 6, 1998, that he had sexual intercourse with her on November 6, but that she consented, and that in prior times, the victim had requested the same types of sex as that which occurred on November 6. The trial court denied both motions.

The trial commenced on July 19, 1999, and the relevant evidence is summarized below.

## SUMMARY OF EVIDENCE

An appellate court summarizes the facts in a light favorable to the State and does not reproduce the evidence relating solely

to the weight and credibility of the witnesses, as it is not the province of an appellate court to review credibility on appeal. See, e.g., *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

The victim's testimony included the following: She was introduced to the defendant and another woman, identified as "Wendy," in the early morning hours of November 6, 1998, while at the victim's boyfriend's apartment. The boyfriend also testified that the victim and the defendant were introduced at this time. The victim accompanied the defendant and Wendy to a convenience store to purchase cigarettes and beer. Rather than take the victim back to her boyfriend's apartment as Wendy had agreed, she drove the threesome to a party at a private residence. After a time at the party, the victim looked for Wendy to acquire a ride back to her boyfriend's apartment. When she could not find Wendy, the victim accepted a ride from the defendant and another man called Roberto. The group stopped along the way at an apartment building where both Roberto and the defendant rented apartments, and the men announced that they had to go inside for a moment. The victim knew Roberto previously and felt that she could trust him, so she accompanied the men inside.

As the victim walked into the defendant's apartment, she turned around to see Roberto going down the stairs to his own apartment and found that she was alone with the defendant. The victim and the defendant talked for a while, and then the defendant led the victim to the kitchen area where he showed her a large amount of methamphetamine. The defendant asked the victim to sell drugs for him, but she declined. After tiring of his repeated requests, the victim finally replied, " 'Yeah. Okay. Whatever.' " The defendant then stated, " ' 'Oh, you'll do business for me. Okay.' " Then the defendant laid a blanket on the floor and pointed to it as if for a sexual favor, to which the victim replied, " 'No. No. I have a boyfriend.' "

After the victim refused the defendant's request to remove her clothing, the defendant walked into the bathroom and returned holding a pistol. He then asked the victim if she wanted to die and repeated his request to remove her clothes. Each time the victim refused his increasing advances, the defendant asked her if she wanted to die. He also pressed the gun to her forehead and stated, " ' "One bullet for you." ' " Using these tactics, the

defendant forced the victim to strip down to her underwear. At first, he told her he would not touch her, but he later laid her down on the floor and had sexual intercourse with her. Specifically, the defendant forced the victim to perform oral sex on him, and then he performed vaginal and anal sex on her. According to the victim, the incident lasted for a couple of hours.

After the defendant sexually assaulted the victim, he allowed her to leave. The victim walked back to her boyfriend's apartment, which was approximately four to five blocks away. When she arrived, she saw that her car was gone and believed that her boyfriend was probably using it to look for her. She then went next door to one of her boyfriend's neighbors and told the neighbor what had happened to her at the defendant's apartment.

The defendant took the stand in his own defense. After again formally waiving his right to remain silent, he testified that he immigrated from Cuba in 1994, that he had limited use of the English language (he testified through an interpreter), that he arrived in Nebraska in 1998, that he met the victim at a dance club, and that they had a friendship and maintained a secret relationship. At this point, the trial court instructed the interpreter not to translate any statement that violated the trial court's order that the defendant not be allowed to testify to an alleged prior sexual relationship with the victim. The defendant then testified that he had met her five or six times at a particular club. Also, when he first met the victim, she was living alone with her children.

The defendant next testified to his version of the events of the evening of November 6, 1998. While he was sitting alone at the club, the victim arrived with her boyfriend. The defendant testified that the victim brought up the subject of a party later. His version of their movements from place to place is essentially the same as the victim's version. His version of the victim's conduct tends to establish her as the friendly originator and aggressor, both socially before they arrived at his apartment and personally when they were alone. He testified that he did not have a gun in the apartment, that he did not threaten her, and that she consented to the acts of sexual intercourse they had that morning. More elaborate details of his testimony have a bearing only on his and the victim's credibility, so we will not relate them further.

The State's cross-examination of the defendant included questions pertaining to his testimony at the in camera hearing, which the State propounded for purposes of impeachment. We will describe this testimony below in our discussion of the defendant's assignment of error in relation thereto.

After the defendant rested his case, the State called the victim's boyfriend's neighbor as a rebuttal witness. The defendant objected to this testimony on the grounds that the neighbor was an improper rebuttal witness and that her testimony was hearsay. The trial court overruled both objections, explaining that the neighbor's testimony disputed that of the defendant and that her testimony was admissible under the excited utterance exception to the hearsay rule.

The neighbor testified that the victim showed up at her door early in the morning on November 6, 1998. She stated that the victim was pale, shaking, crying, and "breathing kind of hard . . . like she was starting to hyperventilate." She appeared "shook up" and "scared." The neighbor testified that the victim told her she had been raped by the defendant and detailed the events of the night. The victim told her that the defendant told the victim to take off her clothes, that she refused, and that he had a gun and threatened her, so she then did what he told her. The victim stayed with the neighbor for about 1 to 1½ hours, and during that time, the victim was constantly crying and "[p]retty shaken."

The jury found the defendant guilty of sexual assault and terroristic threats, but found him not guilty of the use of a weapon to commit a felony. The trial court sentenced him to 10 to 15 years' imprisonment for the sexual assault and 1 to 3 years' imprisonment for the terroristic threats. The defendant now appeals.

## ASSIGNMENTS OF ERROR

The defendant alleges the following errors in his conviction: (1) The trial court improperly excluded evidence of the victim's past sexual conduct with the defendant, (2) the trial court failed to grant immunity to Kinney, (3) the trial court improperly allowed the State to grant the defendant immunity and force him to testify as to his involvement in the distribution of illegal

drugs, (4) the trial court improperly allowed the State to call the neighbor as a rebuttal witness, (5) the trial court incorrectly found that the neighbor's testimony was admissible under the excited utterance exception to the hearsay rule, (6) the evidence did not support the jury's verdict, and (7) the sentences imposed were excessive.

## STANDARD OF REVIEW

■ "In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence." *State v. Jackson*, 258 Neb. 24, 26, 601 N.W.2d 741, 745 (1999).

■ On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998).

The remaining standards of review are cited in the relevant sections of our analysis below.

## ANALYSIS

*Past Sexual Conduct.*

■ In his first assignment of error, the defendant argues that he should have been allowed to introduce evidence that he and the victim had engaged in sexual relations on several occasions before November 6, 1998. Section 28-321, Nebraska's rape shield law, governs the admissibility of the past sexual conduct of a victim and states in pertinent part:

Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior. Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant . . . or (b) *evidence of past sexual behavior with the defendant* when such evidence is offered by the defendant on the

issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged *if it is first established* to the court *that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.*

(Emphasis supplied.) In summary, alleged past sexual conduct of the victim with the defendant must (1) show a relation between the past conduct and the conduct involved in the case and (2) establish a pattern of conduct or behavior by the victim which is relevant to the issue of consent.

Nebraska is a member of the vast majority of states which have enacted rape shield laws patterned after rule 412 of the federal rules of evidence. However, while the same general purpose and policy considerations support the federal rule and the Nebraska rule, we note that a distinct difference exists between the two rules. The federal rule states that evidence is admissible if it is "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution." Fed. R. Evid. 412(b)(1)(B). The Nebraska rule is more specific and more stringent than the federal rule, and this difference is a necessary consideration on the issue in this case.

■ The State contends that the evidence offered by the defendant on his alleged prior sexual conduct with the victim is not credible, and therefore it is not admissible for the purposes of § 28-321. The evidence offered by the defendant concerns conduct between the defendant and the victim which is essentially the same, except for the element of consent, which the State maintains is the gravamen of the defendant's offense. The only issue on the admissibility of claimed prior sexual conduct between the victim of sexual assault and the defendant is whether the offered evidence tends to establish to the court a pattern of conduct or behavior of the victim relevant to the issue of consent. If this evidence is believed, then the evidence is relevant to the issue of the victim's consent. As noted in *State v. Hopkins*, 221 Neb. 367, 375-76, 377 N.W.2d 110, 116 (1985):

Implicit in § 28-321(2)(b) is an evidentiary syllogism. Major: The victim's past sexual behavior with the defend-

ant was consensual. Minor: The victim's behavior in the present prosecution is the type of activity in which the victim participated with the defendant in the past. Conclusion: Therefore, the victim's behavior in the present prosecution was consensual.

The question therefore is whether in deciding the issues presented under § 28-321, can the judge weigh the credibility of evidence presented at the in camera hearing, or is the judge limited to simply determining the relevance of the evidence to the issue of consent?

This is a question of first impression in this jurisdiction. The legislative history of § 28-321 provides no assistance in answering this question. We find that only two states have addressed the issue under their respective state's rape shield law. In *Com. v. Baronner*, 471 A.2d 104 (Pa. Super. 1984), the lower court denied a defendant's request to introduce evidence that he and the victim had engaged in sexual intercourse prior to the date of the alleged sexual assault. The defendant's evidence contradicted the victim's testimony that while she had previously dated the defendant, she had not had sexual relations with him. In denying the defendant's motion, the lower court reasoned that " '[t]he matter reduces itself to a matter of credibility and this Court elects to believe [the victim].' " *Id.* at 106. *Baronner* reversed the lower court's decision, reasoning:

> It was not for the trial judge to reject relevant trial testimony and keep it from the jury merely because he did not believe it. The purpose of the in camera hearing required by the Rape Shield Law is to enable a trial court to determine whether tendered defense evidence of the victim's prior sexual activity is relevant and admissible. . . . The hearing is not intended to afford the trial judge an opportunity to determine the credibility of a tendered defense. If the evidence offered by the defense is relevant and admissible under applicable rules of evidence, the trial court is required to receive such evidence and permit the jury to assess its credibility.

*Id.*

However, the Court of Appeals of Texas disagreed. In *Holloway v. State*, 695 S.W.2d 112 (Tex. App. 1985), the court upheld the trial court's right to weigh the credibility of evidence

presented at the in camera hearing under Texas' rape shield law. In *Holloway*, the trial court prohibited the defendant from presenting evidence that the victim was a common prostitute in the neighborhood, which the defendant asserted was relevant to the issue of consent because he claimed he had exchanged sexual activity for money with the victim on the date of the alleged sexual assault. In affirming the trial court, *Holloway* noted that "[w]hile we agree that testimony concerning a prosecutrix's reputation for being a prostitute may be material to a defense of consent, we find the trial judge did not abuse his discretion in excluding the proffered testimony." *Id.* at 116. *Holloway* went on to hold that under Texas' rape shield law, the trial judge is the sole judge of the credibility of witnesses.

These cases are helpful, but we observe that the alleged sexual misconduct of the victim in *Holloway* was not exclusively with the defendant. Further, both Pennsylvania's and Texas' rape shield laws more closely resemble their federal counterpart than does Nebraska's rule. Specifically, neither state's law includes the "relation" or "pattern of conduct or behavior" language that is in the Nebraska law.

In *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), the Nebraska Supreme Court discussed the application of § 28-321 when a defendant wishes to introduce evidence regarding the victim's past sexual relations with him. While *Hopkins* thoroughly discusses the Nebraska Supreme Court's interpretation of § 28-321, the facts of the case did not require the court to address the issue now before us in this case. However, a review of the analysis in *Hopkins* is helpful. *Hopkins* stated that evidence of a victim's prior sexual history is not admissible unless the defendant

> shows that . . . the victim's past sexual behavior with a defendant is related to the issue of the victim's consent to the sexual act . . . provided that such evidence demonstrates some reasonably associative relationship between the victim's past sexual behavior and the sexual act for which the defendant is prosecuted and, further provided, that such evidence shows a victim's pattern of conduct or behavior which may be construed as consent to the sexual act charged against the defendant.

221 Neb. at 375, 377 N.W.2d at 116. *Hopkins* further stated,

> Thus, for purposes of § 28-321(2)(b), we hold, in order that a victim's past consensual sexual behavior with a defendant be admitted as evidence relevant to a charge of sexual assault, the defendant must, by offer of proof at the in camera hearing, adduce some evidence tending to prove a defendant's claim that the victim consented to the sexual act which is the subject of the prosecuted charge against the defendant.

*Id.* at 376-77, 377 N.W.2d at 117. The court in *Hopkins* concluded its discussion of § 28-321 by acknowledging that even if the defendant presents sufficient evidence at the in camera hearing, the trial court must still determine if the evidence is both relevant under § 28-321 and more probative than prejudicial under Neb. Rev. Stat. § 27-403 (Reissue 1995). Because the defendant in *Hopkins* only presented evidence of the victim's admission that she had sexual relations with him in the past and did not present evidence that she consented on the night of the sexual assault, the court in *Hopkins* affirmed the exclusion of the evidence.

■ We note that § 28-321, as well as *Hopkins* in the above quote, uses the term "tends to prove," which is far less certain than the lone word "proves." We believe the evidence of the alleged prior sexual conduct between the defendant and the victim does tend to establish a pattern of conduct relevant to the issue of consent, at least to the extent that the jury should have been allowed to consider it. The question of the credibility of the defendant's factual account of his alleged history with the victim was for the jury to decide. We rule therefore that a trial court is to determine only the relevancy of evidence at an in camera hearing under § 28-321 and is to leave the question of credibility for the jury. Accordingly, we find that the court erred in excluding such evidence in this case.

Because our holding on this issue will require that this case be retried, we will consider only those remaining issues which will likely arise again upon retrial.

*Immunity for Defense Witness.*

■ In his motion for reconsideration of the § 28-321 issue, the defendant requested that the trial court grant Kinney immu-

nity to testify. The defendant alleges that the trial court should have granted Kinney immunity to negate his apparent need to assert his Fifth Amendment rights so that Kinney could provide alleged corroborating evidence of the defendant's claim of an ongoing relationship with the victim. Neb. Rev. Stat. § 29-2011.02 (Reissue 1995) states:

> Whenever a witness refuses, on the basis of the privilege against self-incrimination, to testify or to provide other information in a criminal proceeding . . . the court, on motion of the county attorney [or] other prosecuting attorney . . . may order the witness to testify or to provide other information. The witness may not refuse to comply with such an order of the court on the basis of the privilege against self-incrimination[.]

Absent a motion from the prosecuting attorney, a trial court does not have authority to grant immunity to a witness under this statute. See *State v. Starks*, 229 Neb. 482, 427 N.W.2d 297 (1988). See, also, *State v. Ammons*, 208 Neb. 812, 305 N.W.2d 812 (1981) (holding that immunity is investigative tool solely prerogative of government and that it can be granted only pursuant to statutory authorization). In the case before us, the record contains no evidence that the State granted or wished to grant immunity to Kinney; therefore, the trial court was powerless to grant the defendant's request.

In *Starks*, however, the Nebraska Supreme Court discussed the split in federal authority on whether a trial court has the inherent authority to grant immunity to a defense witness or whether the grant of immunity is purely a statutory phenomenon. The defendant in *Starks* claimed that he was denied his due process right to a fair trial because the trial court refused to grant immunity to a defense witness, thus denying the defendant the ability to introduce exculpatory evidence. Specifically, the defendant sought to prove that the witness had supplied the defendant with a cigarette laced with the drug known as PCP, thus leading to the conclusion that the defendant could not form the requisite intent to commit murder and was temporarily insane at the time. The witness testified that he did not give the defendant any PCP, and the offer of proof for the remainder of his testimony was that the witness had used PCP while in

California and that he had brought a different drug with him back to Nebraska.

After describing the opposing views, the court in *Starks* held that "it is not necessary to decide whether the [inherent authority rule] should be adopted by this court." *Starks*, 229 Neb. at 493, 427 N.W.2d at 303. The court in *Starks* concluded that the testimony in the defendant's offer of proof was not exculpatory because it lent little, if any, support to the defendant's claim of mental impairment at the time of the crime. We can conclude that in a criminal prosecution, the trial court does not have the inherent authority to grant immunity to a witness when the evidence that might be adduced from the witness is not exculpatory.

In the case before us, the defendant revived at trial his previous motion for judicial immunity and offered affidavits as proof to support his request. We believe that his offer of proof suffers the same defect as that in *Starks*. The affidavits were the sworn statements of the defendant and his counsel, describing what Kinney had told them regarding his knowledge of the alleged relationship between the victim and the defendant. Specifically, Kinney stated that he had witnessed their "relationship" and that he had also seen the victim perform a striptease for the defendant. Such evidence, while relevant to the issue of the victim's consent, would not be exculpatory. At most, the evidence is corroboration of the defendant's testimony and relates to the credibility of the defendant's and the witness' testimony. Even if this evidence had been admitted and believed by the jury, the jury still could have concluded that the victim did not consent on November 6. Accordingly, even if Nebraska followed the inherent authority rule, which we do not decide in this case, the refusal to grant such immunity would not be error.

*Defendant's Compelled Testimony.*

In his third assignment of error, the defendant alleges that the trial court erred in allowing the State to grant the defendant immunity while on the witness stand and compel him to testify about certain matters. On cross-examination, the defendant initially testified that only Kinney knew of his relationship with the victim. When the State pointed out that he had previously testi-

fied that Sund also knew about their relationship, the defendant then testified that Sund and Kinney both knew. Then the following colloquy occurred:

Q [Prosecution]: Now, when you went back to [the private residence where there was a party, the victim] indicated that you approached her and asked her to deal drugs for you. Isn't it, in fact, true that you spoke to her about that?

A (Interpreter): He says, in no moment did I speak about a business.

Q: About what?

A (Interpreter): A business.

Q: Okay. So, you never . . . talked to her about dealing drugs?

A (Interpreter): What business of drugs? I'm not in the business of drugs.

The cross-examination then turned to other points until a recess was called. After the recess, the State brought up the defendant's testimony at the in camera hearing for purposes of impeachment. Specifically, the State referred to the following: " 'Isn't it in fact true that you and Mr. Scott Kinney were involved in the distribution of illegal drugs?' The response, 'Yes.' " The defendant's counsel objected to this line of questioning and the use of the defendant's testimony from the in camera hearing for impeachment. The trial court overruled the objection, reasoning that the defendant could be questioned in this fashion as the testimony related to credibility and was proper impeachment. The defendant's counsel then asked for a limiting instruction because he feared that admission of this testimony for any purpose would result in his client being convicted "of being a bad person as opposed to whether or not he raped the alleged victim." The trial court reserved ruling on the limiting instruction until the jury conference, and it did give such an instruction.

Once the defendant was confronted with his prior testimony, the interpreter informed the court that "[h]e says that he wants to take the Fifth Amendment." At that point, a sidebar occurred, during which the trial court told the State, "Grant him use immunity, and I'll direct him to answer that question."

Thereafter, the State made the following statement before the jury, "Your Honor, at this time the State grants use immunity to the defendant as to his statement involving his involvement in the distribution of illegal drugs." The trial court then directed the defendant to answer, and the defendant admitted making the statement quoted above in his previous testimony. The trial court then instructed the jury that the impeachment evidence was admitted for the limited purpose of aiding the jury in assessing the defendant's credibility and that "[t]he fact that [the defendant] may have been dealing drugs is not to be used by you to conclude he is a bad person and therefore should be convicted of this offense."

In connection with this line of inquiry, the defendant argues that the trial court committed three errors: (1) allowing the State to grant the defendant use immunity with respect to the distribution of illegal drugs in order for the State to attempt to impeach the defendant using the statement he made during the in camera hearing, (2) allowing use of his in camera statements for impeachment at trial, and (3) allowing improper character evidence in the form of his in camera statements.

In *Griffith v. State*, 157 Neb. 448, 464-65, 59 N.W.2d 701, 709 (1953), the Nebraska Supreme Court held:

> The Constitution [is a criminal defendant's] guarantee and protection against [being forced to testify at trial] until he renounce[s] it by voluntarily constituting himself [as] a witness in support of his plea in the case. When he [does] that it [is] irrevocable. He [cannot] alternatively disregard and restore immunity as he decide[s] his self-interest demand[s] or would best be benefited. A defendant in a criminal case who becomes a witness, subjects himself to the rules applicable to other witnesses.

See, also, *State v. Hilpert*, 213 Neb. 564, 330 N.W.2d 729 (1983) (defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to testimony he gives); *State v. Howard*, 184 Neb. 461, 168 N.W.2d 370 (1969) (defendant in criminal case who becomes witness subjects himself to rules of law applicable to other witnesses). Therefore, the defendant had no immunity, and it was unnecessary for the judge to grant him such immunity in order for the prosecutor to

examine him on any subject that was proper under the rules of evidence. However, the propriety of such cross-examination questions under other rules of evidence presents other concerns.

Neb. Rev. Stat. § 27-402 (Reissue 1995) provides in pertinent part:

> All relevant evidence is admissible except as otherwise provided by the Constitution of the United States or the State of Nebraska, by Act of Congress or of the Legislature of the State of Nebraska, by these rules, or by other rules adopted by the Supreme Court of Nebraska which are not in conflict with laws governing such matters.

We can find no authority in this jurisdiction which prevents the use of a defendant's testimony at the in camera hearing for impeachment purposes at trial, and the defendant cites us to none. The defendant's prior statement was made under oath, and we believe it was contradictory to the statement he made at trial. We therefore conclude that the State is not prohibited from using the defendant's testimony at the in camera hearing for the purpose of impeachment at trial.

The defendant also argues that this evidence served no purpose other than improper character evidence. The State offered the evidence, and it was received and used only for impeachment purposes, relating to the defendant's credibility. Neb. Rev. Stat. § 27-608 (Reissue 1995) generally limits evidence on credibility of a witness to reputation and opinion evidence, but it does provide:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness, or (b) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The application of this rule to the situation at hand is not clear. ▪ We believe the best analysis of the question is found in *U.S. v. Fleming*, 19 F.3d 1325 (10th Cir. 1994). In *Fleming*, the

defendant was being prosecuted for conspiracy to transport firearms. The trial court allowed the prosecution to call a rebuttal witness to introduce specific evidence to show that statements made by the defendant on direct examination were false. In affirming the trial court's decision, the court in *Fleming* held:

> The rule [Fed. R. Evid. 608(b)] does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue. *See* 27 *Charles A. Wright & Victor J. Gold, Federal Practice and Procedure* § 6096 at 546-47 (1990). A defendant may not make false statements on direct examination and rely on the government's inability to challenge his credibility as to the truth of those statements.

*Fleming*, 19 F.3d at 1331. While the testimony the State sought to impeach in this case was made by the defendant on cross-examination rather than direct, we believe that the analysis and reasoning in *Fleming* apply. A defendant should not be allowed to affirmatively make false statements and then rely on strict adherence to the rules of evidence to prevent the prosecution from challenging his or her credibility as to the truth of his or her testimony.

*Fleming* went on, however, to state that such evidence must be measured under Fed. R. Evid. 403 if an objection is made. In *Fleming*, no objection had been made, and the conclusion in *Fleming* was that the trial court's ruling was not plain error. In the case now before us, the defendant's counsel did make a rule 403 objection, arguing that he did not want his client convicted of rape simply because he was "a bad person." The trial court overruled the objection and gave the jury a limiting instruction. Such rulings are within the discretion of the trial court, and we find no abuse of discretion here. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

*Excited Utterance.*

The defendant's fourth assignment of error—arguing that the trial court should not have allowed the State to call the neighbor in rebuttal—is moot because the case will need to be retried on other issues. Therefore, we will not consider that assignment of

error relating to calling the neighbor as a rebuttal witness. However, the defendant's fifth assignment of error claims that the trial court erred in finding that the neighbor's testimony was admissible under the excited utterance exception to the hearsay rule. The defendant argues that the victim had time for conscious reflection as she walked the four to five blocks from the defendant's apartment to the neighbor's apartment. Because this situation could arise again on retrial, we will address it here.

 A statement is excepted from exclusion as hearsay if the statement "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Neb. Rev. Stat. § 27-803(1) (Reissue 1995). "A statement must meet the following criteria to qualify as an excited utterance: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event." *State v. Anderson,* 245 Neb. 237, 241, 512 N.W.2d 367, 370 (1994). See, also, *State v. Newman,* 5 Neb. App. 291, 559 N.W.2d 764 (1997), *overruled on other grounds, State v. Becerra,* 253 Neb. 653, 573 N.W.2d 397 (1998).

 In *Newman,* we addressed the admissibility of a victim's statements to her neighbor after the victim was sexually assaulted in her home. After the assault, the victim drove her assailant to his workplace and then drove directly to her neighbor's house. In *Newman,* we quoted *State v. Tlamka,* 244 Neb. 670, 508 N.W.2d 846 (1993), as follows:

" '[S]tatements need not be made contemporaneously with the exciting cause but "may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated." ' . . . '[T]he key requirement is spontaneity, a showing that the statement was made without time for conscious reflection.' . . . However, the time interval between the startling event and the statements in question is not 'of itself dispositive of the spontaneity issue.' . . . The permissible length of time between the statement and the startling event is determined on the unique facts of each case."

5 Neb. App. at 299, 559 N.W.2d at 771. We further quoted the same case for the following rule:

" 'While it is not necessary to show that the declarant was visibly excited in order to qualify under the excited utterance exception . . . a declarant's nervous state is relevant to the issue of whether the statement was made by the declarant while under the stress of the event.' " " ' " " '[T]he true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue . . . .' " ' . . ."
*Id.* at 300, 559 N.W.2d at 772. While the record in *Newman* did not reflect the distance driven by the victim or the time between the assault and the statements to the neighbor, we concluded that the statements qualified as an excited utterance because the neighbor testified that the victim appeared at the door screaming and crying, and was hysterical.

 The standard of review on the issue of the admissibility of evidence as an excited utterance is that it is within the trial court's judicial discretion. See *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990). The distance the victim walked was relatively short, and the neighbor testified that the victim was crying, shaking, and scared to the point she could not speak at times. More importantly, under all the circumstances the evidence showed the victim to have been under, if the State's evidence is accepted, her statements may be considered as spoken under the stress of nervous excitement and shock produced by the act in issue. Under the circumstances, we cannot say the trial court abused its discretion in admitting into evidence her statements to the neighbor.

*Sufficient Evidence for Verdict.*

As his sixth assignment of error, the defendant argues that the evidence could not support the jury's guilty verdicts on the sexual assault and terroristic threats charges.

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly

admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.

*State v. Ward*, 257 Neb. 377, 381, 597 N.W.2d 614, 618 (1999). "Any person who subjects another person to sexual penetration . . . without consent of the victim . . . is guilty of sexual assault in the first degree." § 28-319(1). "A person commits terroristic threats if he or she threatens to commit any crime of violence . . . [w]ith the intent to terrorize another . . . or . . . [i]n reckless disregard of the risk of causing such terror . . . ." § 28-311.01. We find that the record contains sufficient evidence, if believed by the jury, to support the guilty verdicts on these crimes.

*Excessive Sentences.*

Because this case must be retried, we need not consider whether the sentences are excessive.

## CONCLUSION

For the reasons stated, the defendant's convictions must be set aside and the cause returned for retrial consistent with this opinion. We therefore reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.