STATE OF NEBRASKA, APPELLEE, V.
ORESTES SANCHEZ-LAHORA, APPELLANT.

622 N.W.2d 612

Filed February 9, 2001.   No. S-99-1129.

Nicholas D. Valle, of Langvardt & Valle, P.C., for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellant, Orestes Sanchez-Lahora, was convicted of first degree sexual assault and terroristic threats. The Nebraska Court of Appeals reversed the judgment and remanded the cause for a new trial because the trial court excluded the evidence of the victim's alleged prior sexual conduct with Sanchez-Lahora. See *State v. Sanchez-Lahora*, 9 Neb. App. 621, 616 N.W.2d 810 (2000). We granted the State's petition for further review.

The issue presented by this case is the trial court's role under Neb. Rev. Stat. § 28-321 (Reissue 1995), Nebraska's rape shield statute, in determining the admissibility of evidence regarding the victim's alleged prior sexual conduct. The Court of Appeals held that a trial court is to determine only the relevance of the evidence at an in camera hearing under § 28-321 and should leave the issue of credibility for the jury. We agree and accordingly affirm.

## ASSIGNMENTS OF ERROR

The State assigns that the Court of Appeals erred in determining that (1) at an in camera hearing, a trial court can determine only the relevance of the evidence presented to the issue of consent and cannot weigh the credibility of the evidence, and (2) evidence presented by Sanchez-Lahora at the in camera hearing was relevant to the issue of consent and tends to establish a pattern of conduct relevant to the issue of consent to the extent that the jury should have been allowed to consider it.

## BACKGROUND

The full background of this case can be found in the Court of Appeals' opinion. See *State v. Sanchez-Lahora, supra.* We

granted Sanchez-Lahora's petition for further review on the sole issue of the admissibility of the victim's alleged prior sexual conduct with Sanchez-Lahora and, therefore, relate only the facts which are pertinent to that issue.

Sanchez-Lahora was convicted by a jury of first degree sexual assault and terroristic threats and was sentenced to consecutive sentences of 10 to 15 years' imprisonment and 1 to 3 years' imprisonment, respectively, for events occurring on or about November 6, 1998. Sanchez-Lahora asked for an in camera hearing and order allowing him to offer evidence at trial of specific instances of the victim's past sexual behavior with him.

At the in camera hearing and after a formal waiver of his right to remain silent, Sanchez-Lahora testified that he had known the victim for 3 to 4 months before November 6, 1998. He stated that during this time, the victim had sexual relations with him approximately eight to nine times at his home and three to four times at motels. He admitted to having sexual intercourse with the victim on November 6, but he claimed that she participated voluntarily.

On cross-examination, the State asked Sanchez-Lahora why he had denied knowing the victim when asked by the police and had admitted knowing the victim only after being informed that the police had obtained a videotape from a convenience store. Sanchez-Lahora spoke little English and explained that he knew the victim by a different version of her name other than the one used by the police investigator during the first interview. He had also asked to see the videotape, but it was not shown to him.

The State also inquired into Sanchez-Lahora's relationship with two witnesses, Scott Kinney and Jamie Sund. Sanchez-Lahora testified that these two men knew of his relationship with the victim. Sanchez-Lahora's counsel objected to the testimony as being beyond the scope of direct examination. The trial court overruled the objection upon the State's explanation that Kinney was "under" Sanchez-Lahora in the distribution of illicit drugs, a hierarchy which the State believed bore on Kinney's credibility and bias. The trial court also allowed the State to ask Sanchez-Lahora if he and Kinney were involved in the distribution of illegal drugs after the State agreed not to use the answer in a prosecution if he admitted to the activity. He then answered that he and Kinney were involved in the distribution of illegal drugs.

Sanchez-Lahora also testified that he told two other witnesses about his sexual relationship with the victim; however, he could not provide information on their whereabouts. He further stated that his neighbor knew of his relationship with the victim, but the neighbor did not testify at the in camera hearing. Kinney testified that he knew Sanchez-Lahora and the victim, but he refused to answer further questions based on his Fifth Amendment right against self-incrimination.

The State requested that Sanchez-Lahora's motion to introduce evidence of his alleged relationship with the victim be denied. The State argued that under *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), Sanchez-Lahora had failed to meet his burden in adducing evidence other than his allegation. The court agreed this was the standard and also informed Sanchez-Lahora's counsel that if the court found that he had met his burden under *Hopkins*, then the State would be given an opportunity to present further evidence. The court then ruled in the State's favor, finding that the "defendant did not meet the standard set out in Neb. Rev. Stat. § 28-321 (2)(b)."

Sanchez-Lahora filed a motion for reconsideration and included an accompanying motion for a grant of immunity to Kinney. A hearing was held on May 21, 1999. In support of his requests, affidavits of Sanchez-Lahora and his counsel were admitted into evidence over the State's objection. His counsel's affidavit stated that he had interviewed Kinney and that Kinney had admitted seeing the victim at Sanchez-Lahora's home on several occasions prior to November 6, 1998, and had observed the victim perform a "striptease" for Sanchez-Lahora. Kinney also stated that the victim was known to exchange sexual favors for controlled substances. Sanchez-Lahora's affidavit stated that he had had sexual relations with the victim, with her consent, before and on November 6. He also stated that before November 6, the victim had requested the same type of sex as that which had occurred on November 6.

The court acknowledged that Sanchez-Lahora's theory of consensual sex permitted the court to admit evidence of the victim's past sexual conduct with him under § 28-321. The court noted, however, that Sanchez-Lahora's affidavit stated only that the consensual relations were similar in nature, without specify-

ing what type of sex was involved. Based upon this finding, the court determined that Sanchez-Lahora had failed to demonstrate that the past activity showed a relation to the conduct involved in the case and tended to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent. The court denied both Sanchez-Lahora's motion for witness immunity and his motion to introduce evidence of the victim's past sexual behavior with him.

## STANDARD OF REVIEW

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Silvers*, 260 Neb. 831, 620 N.W.2d 73 (2000); *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000).

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000); *State v. Hansen*, 259 Neb. 764, 612 N.W.2d 477 (2000).

## ANALYSIS

Nebraska's rape shield statute, § 28-321(2), governs the admissibility of a victim's past sexual conduct:

> Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior. Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: . . . (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

The Court of Appeals stated that the only issue on the admissibility of the claimed prior sexual conduct was whether the evidence tended to establish a pattern of conduct or behavior of the victim relevant to the issue of consent. *State v. Sanchez-Lahora*, 9 Neb. App. 621, 616 N.W.2d 810 (2000). The court then concluded that any evidence of the victim's past consensual sexual relations with Sanchez-Lahora, if believed, would be relevant. The court framed the issue as whether the trial court can weigh the credibility of evidence presented at the in camera hearing or is limited to determining the relevance of the evidence to the issue of consent. *Id.*

In *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), we set out the general guidelines for admitting evidence of the victim's past sexual conduct under § 28-321 when the defendant's affirmative defense is the victim's consent to the prosecuted act. The trial court must make three determinations before admitting the evidence of past sexual relations: (1) whether the proffered evidence tends to prove the defendant's claim that the victim consented to the sexual act which is the subject of the prosecuted charge against him; (2) whether the victim's past sexual behavior shows a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## RELEVANCE

The State contends that Sanchez-Lahora failed to establish a pattern of conduct on the part of the victim that was relevant to the issue of consent. During the hearing on Sanchez-Lahora's motion to reconsider, the trial court, in its ruling, focused only on Sanchez-Lahora's affidavit. The court noted that he stated that the prior sexual relations between himself and the victim were consensual and similar in nature, without specifying what type of sex was involved. The trial court did not comment on his live testimony at the in camera hearing. Based upon this finding, the court concluded that Sanchez-Lahora had failed to satisfy

the requirements of § 28-321 that the evidence show a relation to the conduct involved in the case and that it tend to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent. The court therefore overruled his motion to offer the evidence at trial.

Admittedly, there are occasions when past consensual sexual relations between the victim and the defendant may not be relevant to the prosecuted act. For example, the past relations may be too remote in time to be relevant. See, e.g., *State v. Stellwagen*, 232 Kan. 744, 659 P.2d 167 (1983) (affirming trial court's exclusion of prior relationship on remoteness ground). Courts have also found that prior consensual single-partner intercourse was not relevant to an allegation of multiple-participant rape. See, e.g., *People v Williams*, 416 Mich. 25, 330 N.W.2d 823 (1982).

A court may also limit a defendant's testimony or questioning of a complainant in order to prevent undue prejudice when the facts of the prior relations seem dissimilar to the prosecuted act. See, e.g., *People v. Schuldt*, 217 Ill. App. 3d 534, 577 N.E.2d 870, 160 Ill. Dec. 545 (1991) (trial court properly limited defendant to eliciting testimony from complainant that she had sexual intercourse with defendant twice where defendant could not show that prior relations had involved consensual sado-masochistic sexual conduct as complainant alleged occurred during the act in question).

Finally, evidence of prior consensual relations is not relevant to cases where the victim's injuries preclude the possibility of consent. See, e.g., *State v. Jones*, 716 S.W.2d 799 (Mo. 1986) (en banc) (affirming exclusion of defendant's testimony regarding prior consensual relations where physician's testimony supported victim's allegation that she had been choked and physician had found cervical tear); *State v. Neumann*, 179 Wis. 2d 687, 508 N.W.2d 54 (Wis. App. 1993) (concluding erroneous jury instruction to disregard prior consensual sexual relations was harmless error where evidence overwhelmingly showed defendant had used force and violence against victim). In this case, however, the physical evidence of the victim's injuries, while not irrelevant, was not of the nature such as to preclude the possibility of consent based upon that evidence alone.

Section 28-321 requires the trial court to determine whether the victim's past sexual behavior with the defendant shows a pattern of conduct or behavior on the part of the victim that is relevant to consent. However, in cases where the defendant alleges a history of consensual, single-partner sexual relations, the statute does not require the defendant to color-match intimate details of those past relations with the act in question in order to show relevancy. Compare, Nev. Rev. Stat. § 48.069(1) (2000) (requiring accused to submit to court written offer of proof and sworn statement of specific facts that he expects to prove); Minn. R. Evid. 412 (West Cum. Supp. 2001) (defendant must set out with particularity offer of proof of evidence that accused intends to offer relative to previous sexual conduct of victim).

Sanchez-Lahora testified that he engaged in sexual conduct with the victim on 12 to 13 occasions during the 3 to 4 months before the prosecuted act. He also stated that the sexual encounters always occurred at his home or a motel and were consensual and similar in nature on each occasion, including the night in question. Although the trial court might have limited any testimony regarding the details of the past relations under Neb. Rev. Stat. § 27-403 (Reissue 1995), under the facts of this case, it erred by finding Sanchez-Lahora had failed to satisfy the requirement of § 28-321 that the evidence show a pattern of conduct on the part of the victim which is relevant to consent.

### ASSESSING CREDIBILITY OF EVIDENCE

During the in camera hearing, the State moved to overrule Sanchez-Lahora's motion to introduce evidence of his alleged relationship with the victim because *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), indicated that Sanchez-Lahora had failed to meet his burden in adducing evidence *other than* his allegation. The court agreed this was the standard and also informed Sanchez-Lahora's counsel that if the court found that he had met his burden under *Hopkins*, then the State would be given an opportunity to present further evidence. These statements indicate that the court apparently believed its role was to assess the credibility of the evidence presented by the defendant.

In *State v. Hopkins, supra*, the defendant did not admit to having sexual relations with the victim on the night charged. Rather,

he stated he was too drunk to remember the events. Thus, he presented no evidence showing consent for the prosecuted act, and we were not presented with the issue whether the trial court should weigh the credibility of the evidence adduced at the in camera hearing under § 28-321.

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Neiss,* 260 Neb. 691, 619 N.W.2d 222 (2000); *State v. Hernandez,* 259 Neb. 948, 613 N.W.2d 455 (2000).

In its petition for further review, the State argues that Sanchez-Lahora's evidence is not credible and urges this court to adopt the standard in *Holloway v. State,* 695 S.W.2d 112 (Tex. App. 1985) (two-judge panel), *affirmed on other grounds* 751 S.W.2d 866 (Tex. Crim. App. 1988) (en banc) (concluding that victim's reputation for being prostitute was not material to fact at issue).

In *Holloway,* the Texas rape shield statute in effect at the time of the offense was quoted in relevant part:

> "Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted [in sexual assault cases] only if, and only to the extent that, the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

751 S.W.2d at 867 n.2.

In *Holloway v. State, supra,* the defendant sought to present evidence of the victim's reputation for being a prostitute. The Court of Appeals affirmed the trial court's exclusion of the evidence, based on its conclusion that "the trial judge is the sole judge of the credibility of the witnesses and as such he may accept or reject any part or all of the testimony given." 695 S.W.2d at 117, citing *Bellah v. State,* 653 S.W.2d 795 (Tex. Crim. App. 1983).

However, the State neglected to inform this court that this ruling was specifically rejected by the Texas Court of Criminal Appeals. In *Holloway v. State,* 751 S.W.2d 866 (Tex. Crim. App. 1988), the Court of Criminal Appeals pointed out that the case

relied upon by the Court of Appeals for its holding dealt with a pretrial hearing on the admissibility of the defendant's confession. See *Bellah v. State, supra.* Deciding whether a confession was voluntarily and knowingly made by the defendant and therefore admissible is an established preliminary question requiring the trial court to weigh the credibility of witnesses on this factual issue. See *Lego v. Twomey*, 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972) (applying preponderance standard to question of voluntariness). Accord *State v. Lopez*, 249 Neb. 634, 645, 544 N.W.2d 845, 854 (1996) ("[t]here is no question that the State has the burden to establish by a preponderance of the evidence that a defendant's statement was voluntary and not· coerced"). The Texas Court of Criminal Appeals emphasized, however, that "[a] rule of admissibility such as [the rape shield statute] is 'not concerned with the weight of the evidence.'" *State v. Holloway*, 751 S.W.2d at 870.

Not only was the wording of the statute different in *Holloway*, but the reasoning the State asks us to adopt was specifically rejected on appeal. Instead, we turn to the history of rape shield legislation for guidance on the trial court's role in assessing the credibility of the evidence presented at the in camera hearing.

All states now have some form of a rape shield statute or rule of evidence. See Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior*, 44 Cath. U. L. Rev. 709 (1995) (citing statutes or rules of evidence for 48 states). See, also, Ariz. Rev. Stat. § 13-1421 (West Cum. Supp. 2000); Utah R. Evid. 412. The main purposes served by § 28-321 were set out in *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), and, in particular, include preventing the use of the victim's past sexual behavior with persons other than the defendant to infer consent by the victim to the prosecuted act or to undermine the victim's credibility.

Most state statutes are patterned after rule 412 of the federal rules of evidence. See *State v. Hopkins, supra*, citing 1A John H. Wigmore, Evidence in Trials at Common Law § 62 n.11 (Tillers rev. 1983). When federal rule 412 was originally enacted in 1978, it included the following language:

> [I]f the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

See Privacy Protection for Rape Victims Act of 1978, Pub. L. No. 95-540 § 2(a), 92 Stat. 2046, 2047 (1978) (amended, Minor and Technical Criminal Law Amendments Act of 1988, Pub. L. No. 100-690, § 7046(a), 102 Stat. 4395, 4400 (1988)).

Some states patterned their rape shield statute after the original federal rule and still incorporate this provision. See, e.g., D.C. Code Annot. § 22-4122(B)(b)(2) (Michie 1996); Haw. R. Evid. 412, Haw. Rev. Stat. § 626-1 (1993 & Cum. Supp. 2000); Idaho R. Evid. 412(c)(2); Iowa R. Evid. 412(c)(2); Miss. Evid. Rule 412(c)(2); N.C.R. Evid. 412(d). The statutes containing this provision arguably authorize the trial court to make factual findings on the issue of consent before admitting the evidence of past consensual relations between the defendant and the alleged victim.

However, federal rule 412 was amended in 1994 to delete the language from subsection (c) that authorized the trial court to make factual findings before admitting the evidence permitted under the rule. The action was based upon the advisory committee's concern that the provision was causing confusion over whether a trial court could exclude evidence of past consensual sexual relations between the victim and the defendant if the trial court did not believe that such acts had occurred, raising substantial constitutional concerns. See Fed. R. Evid. 412, Notes of Advisory Committee ("[s]uch an authorization raises questions of invasion of the right to a jury trial under the Sixth and Seventh Amendments").

Nebraska enacted its rape shield statute in 1977 and amended it in 1984, but in both instances, the Nebraska Legislature chose not to include the judicial determination provision found in the original federal rule 412(c)(2). Because the Nebraska rape shield statute is patterned after federal rule 412, see *State v. Hopkins, supra*, citing Introducer's Statement of Intent, L.B. 79, Judiciary Committee, 88th Leg., 2d Sess. (Jan. 26, 1983), we conclude that

the Legislature rejected any factfinding role for the trial court by omitting this language from the Nebraska statute.

We find no language in § 28-321 that permits the trial court to weigh the credibility of a defendant's allegations of past consensual sexual conduct with a victim. Accordingly, we conclude that the Court of Appeals correctly determined that the question of the credibility of Sanchez-Lahora's factual account of his alleged history with the victim is for the jury to decide.

AFFIRMED.