STATE OF NEBRASKA, APPELLEE, V.
STEVEN REDMOND, APPELLANT.
631 N.W. 2d 501

Filed August 10, 2001. No. S-99-1456.

James R. Mowbray and Robert W. Kortus, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Following the fatal shooting of Mark B. Clinton—a maintenance worker at the Kimball County Courthouse—Steven Redmond was charged with first degree murder. The killing took place before our decision in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), which held that malice was not an essential element of second degree murder and which overruled previous cases that held otherwise. While Redmond's case was pending, *Burlison* was decided. Following a bench trial, the district court made a factual finding that the State had failed to prove premeditated malice. The district court then found Redmond guilty of second degree murder. In reaching its determination, the district court discussed the effect of *Burlison* on its decision and determined that *Burlison* applied to the case.

On appeal, Redmond argues that the retroactive application of *Burlison* denied him due process under the 14th Amendment to the U.S. Constitution and Neb. Const. art. I, § 3, because the State failed to prove malice beyond a reasonable doubt. Thus, if *Burlison* had not been retroactively applied to his case, under the law before *Burlison*, Redmond would have been convicted of manslaughter instead of second degree murder. We determine that Redmond was not denied due process, and we affirm.

## ASSIGNMENTS OF ERROR

Redmond assigns that the district court erred in (1) failing to include malice as an element of second degree murder when the offense occurred before *State v. Burlison, supra,* was decided and (2) finding there was sufficient evidence to convict him of second degree murder and use of a deadly weapon to commit a felony.

## BACKGROUND

On August 21, 1998, an information was filed charging Redmond with count I, murder in the first degree under Neb. Rev. Stat. § 28-303(1) (Reissue 1995), and count II, using a deadly weapon to commit a felony pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 1995). Under count I, the information stated that "STEVEN REDMOND, on or about the 5th day of August A.D. 1998, in the County of Kimball and State of Nebraska, then and there being, did kill another person, to-wit: Mark B. Clinton, purposely and with deliberate and premeditated malice." Under count II, the information stated that

STEVEN REDMOND, on or about the 5th day of August A.D. 19998 [sic], in the County of Kimball and State of Nebraska, then and there being, did use a firearm, to commit a felony which may be prosecuted in a court of this state, to-wit: Murder in the First Degree, a Class I or IA Felony.

At trial, a Kimball police officer, Phillip L. Short, testified that at about 1:10 a.m. on August 5, 1998, an intoxicated Redmond was involved in an altercation with a bartender at a local bar. When the police arrived, Redmond began yelling that he wanted the Federal Bureau of Investigation (FBI) to be called and that the police in Kimball were selling drugs. As a result, Redmond was arrested and taken to the Kimball County Courthouse where the sheriff's office was located. While at the courthouse, Redmond requested an ambulance due to an injury to his face and past medical problems. An ambulance was called, and Redmond was taken to the hospital.

Short testified that Redmond had been behaving in a belligerent manner both before and during his arrest. While at the hospital, Redmond again became belligerent, started yelling at hospital personnel, and demanded to see Short's supervisor. The

chief of police, Billie L. Shank, was then called. Shank testified that when he arrived at the hospital, Redmond was acting irrationally. Due to previous medical problems Redmond had experienced and the fact that most of the charges against him would be misdemeanors, the police released Redmond to the care of his father instead of placing him in jail.

Amanda Colburn Stewart, the dispatcher on duty at the sheriff's office, testified that at approximately 3 a.m., Redmond called the sheriff's office and asked for the telephone number for the FBI. Stewart testified that at approximately 5:30 a.m., a motion sensor alerted her that a person was in the lobby of the building. Through a television monitor connected to a surveillance camera, Stewart saw a man, later identified as Redmond, standing in the doorway. Stewart placed a call to the telephone in the lobby. The telephone rang three times, and then Stewart saw the door open and Clinton emerge from inside the courthouse, so she hung up the telephone.

Stewart testified that Clinton and Redmond had a short conversation and that Clinton then grabbed Redmond's jacket and pushed him up against the wall. For a period of time, Clinton and Redmond were then partially in the "blackout area," an area of the lobby that could not be seen from the surveillance system. Stewart next observed Redmond's arms come up and saw that he had what she thought resembled a cane in his right hand. Stewart testified that Clinton then turned to his left and reached for the door with his right arm. Stewart stated that Clinton was not facing Redmond and had already turned toward the door. Stewart then realized that Redmond had a rifle instead of a cane. Stewart looked away from the monitor in order to call Short and, during that time, heard two gunshots. Stewart looked up at the monitor and could not see Clinton. Stewart observed Redmond fire a gun at the door and later observed him reach in through the glass, open the door, and go into the courthouse from the lobby. Stewart heard some shots fired inside the courthouse. Stewart then called for additional help, and Shank used the fire escape to reach the sheriff's office. Watching the monitor, Stewart and Shank then saw Redmond emerge in view of the camera. Stewart was unable to observe much more, and Redmond went out on the front porch and beyond the view of the cameras.

After Redmond went outside, he fired more shots, including shooting at a parked police cruiser. Redmond eventually surrendered to a deputy sheriff. Clinton's body was found in the lobby area, lying against the door. Authorities seized a rifle and a handgun from Redmond. It was later determined that a bullet from the handgun was the cause of Clinton's death. Autopsy photographs show a bullet wound in the bottom left of Clinton's right shoulder blade.

Following trial, the court found Redmond guilty on count I of second degree murder and guilty on count II of using a deadly weapon to commit a felony. In reaching this determination, the court determined that the State had not met its burden of proving premeditated malice beyond a reasonable doubt. Thus, the court found that the State had failed to prove that Redmond was guilty of first degree murder. The court then found Redmond guilty of second degree murder based on the factual finding that he intentionally shot Clinton but without premeditation. In reaching this determination, the court relied on Stewart's testimony and made a finding of fact that Clinton had been shot in the back, indicating that the shooting did not occur as part of the struggle between Redmond and Clinton. The court also reasoned that Redmond's intent was shown because, following the shooting, he fired more shots and entered the courthouse instead of tending to Clinton's wounds.

The district court then specifically addressed *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), stating the following:

> There was talk this morning about State versus Burlison and I had dug that case out some time ago myself. It's my opinion what that case has done is not changed the law as the statute still reads the same as it did before. State versus Burlison just said that the Supreme Court has changed its mind about how it was going to interpret the statute and did not say that from this point forward it will be interpreted implied, rather it reversed all of its prior opinions that had misread or misinterpreted as the court now feels the second degree murder statute reads.
>
> That being the case, the State has proved beyond a reasonable doubt that the defendant has committed an unlawful killing . . . .

Redmond was sentenced on count I for a period of 40 to 60 years' imprisonment and on count II to a period of 4 to 6 years' imprisonment, with the sentences to run consecutively. Redmond appealed. During the course of this appeal, the U.S. Supreme Court decided *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001), a case involving the retroactive application of a judicial decision. Redmond filed a motion seeking to allow the parties to file supplemental briefs to address the effect of *Rogers* on this case. We granted Redmond's motion.

## STANDARD OF REVIEW

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001); *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001).

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Sanchez-Lahora*, 261 Neb. 192, 622 N.W.2d 612 (2001); *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000).

## ANALYSIS

### Retroactive Application of *State v. Burlison*

Because Redmond killed Clinton before *State v. Burlison, supra*, was decided, he contends that *Burlison* cannot be applied to his case. Redmond argues that a retroactive application of *Burlison* to his case violates due process because the State failed to prove malice beyond a reasonable doubt at trial. Thus, if *Burlison* had not been retroactively applied to his case, under the law before *Burlison*, Redmond would have been convicted of manslaughter instead of second degree murder.

Since 1978, Neb. Rev. Stat. § 28-304 (Reissue 1995) has provided in part: "(1) A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Before 1977, the second degree murder statute defined such a killing as one done "purposely and maliciously."

Neb. Rev. Stat. § 28-402 (Reissue 1975). Despite the statutory change in the definition of second degree murder, this court continued to include malice as a necessary element of second degree murder until 1998. See, e.g., *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Manzer*, 246 Neb. 536, 519 N.W.2d 558 (1994); and *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996). These decisions, however, were not without disagreement. See, e.g., *State v. Ryan, supra* (Gerrard, J., dissenting; Connolly, J., dissenting; Wright, J., dissenting). In 1998, we overruled those cases which held that malice was a necessary element of second degree murder. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

In *State v. Burlison, supra*, the appellant sought postconviction relief on the basis that he pled guilty to second degree murder when the operative information failed to include the element of malice. We determined that malice is not a necessary element of second degree murder under § 28-304 and overruled those cases which held otherwise. In reaching the determination that malice is not a necessary element of second degree murder, we emphasized that under the plain and ordinary meaning of § 28-304, malice was not included as an element of the crime and had been removed from the statutory definition in 1977. See 1977 Neb. Laws, L.B. 38 (operative July 1, 1978). We further noted that there are no common-law crimes in Nebraska, and we then concluded that our prior decisions interpreting § 28-304 were clearly erroneous.

We did not apply our holding in *Burlison* in a solely prospective manner. Instead, we applied the holding of the case to the appellant and affirmed his conviction. We have also directed that the law as established in *Burlison* be applied to a crime that occurred before *Burlison* was decided. See *State v. White*, 257 Neb. 943, 601 N.W.2d 731 (1999). But, Redmond contends that because a retroactive application of *Burlison* makes the killing of Clinton a greater crime than it was when committed, a retroactive application of *Burlison* denies him due process under *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), and the recent case of *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001).

In *Bouie v. City of Columbia, supra,* the petitioners were sit-in demonstrators who refused to leave the premises after they were requested to do so. The petitioners were convicted under a criminal trespass statute providing that " '[e]very entry upon the lands of another . . . after notice . . . prohibiting such entry, shall be a misdemeanor . . . .' " 378 U.S. at 349 n.1. In affirming the convictions, the South Carolina Supreme Court construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises after receiving notice to leave. The U.S. Supreme court reversed, and stated:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates a crime*, or makes it *greater* than it was, when committed." . . . If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. . . . If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

(Emphasis in original.) 378 U.S. at 353-54. The Court emphasized that the issue was whether the construction gave the petitioners fair warning that their conduct was a crime. The Court noted that the decision of the South Carolina Supreme Court had "not even the slightest support in prior South Carolina decisions," was inconsistent with the law in other states, and was inconsistent with the plain meaning of the criminal statute. 378 U.S. at 356. So, the Court reversed, finding that the petitioners' due process rights had been violated.

The U.S. Supreme Court clarified the holding of *Bouie* in *Rogers v. Tennessee, supra.* In *Rogers,* the petitioner was convicted under Tennessee's criminal homicide statute. Under the

common law of Tennessee, a "year and a day rule" provided that no defendant could be convicted of murder unless his or her victim had died by the defendant's act within a year and a day of that act. 532 U.S. at 453. The criminal homicide statute made no mention of the year-and-a-day rule. The petitioner appealed and contended that the year-and-a-day rule applied to his case. The Tennessee Supreme Court examined the year-and-a-day rule, determined that the original reasons for the rule no longer existed, and abolished it. *State v. Rogers*, 992 S.W.2d 393 (Tenn. 1999). The court then held that retroactive application of its decision abolishing the year-and-a-day rule did not violate due process. *Id.*

On appeal to the U.S. Supreme Court, the petitioner relied on *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), and argued that the Due Process and Ex Post Facto Clauses prohibited retroactive application of the judicial abolishment of the year-and-a-day rule. The Court disagreed with this contention and stated that to the extent the petitioner argued that the Due Process Clause incorporates the specific prohibitions of the Ex Post Facto Clause, he misread *Bouie*. The Court recognized that *Bouie* contained "some expansive language" that was suggestive of the broad interpretation for which the petitioner argued. *Rogers v. Tennessee*, 532 U.S. 451, 458, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). The Court then determined that language in *Bouie* stating that the Due Process Clause operated in the same manner as the Ex Post Facto Clause was dicta. The Court stressed that retroactive judicial decision-making is not analyzed by reference to the Ex Post Facto Clause, but is instead analyzed in accordance with the more basic and general principle of fair warning under the Due Process Clause. The Court then stated: "*Bouie* restricted due process limitations on the retroactive application of judicial interpretations of criminal statutes to those that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " 532 U.S. at 461.

When examining the facts of the petitioner's case, the Court determined that the Tennessee Supreme Court's abolition of the year-and-a-day rule was not unexpected and indefensible. The Court noted that a majority of states had abolished the rule and that the rule had only a "tenuous foothold as part of the criminal

law of the State of Tennessee." 532 U.S. at 464. The rule had never served as a ground of decision in any prosecution for murder in the State and had only been mentioned in dicta in Tennessee cases.

 Under *Rogers*, the U.S. Constitution does not require that retroactive judicial decisions be analyzed with reference to the Ex Post Facto Clause. Instead, a judicial decision interpreting a statute may be applied retroactively unless the decision denies due process by being both unexpected *and* indefensible by reference to the law which had been expressed prior to the conduct in issue.

In this case, the change of law in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), cannot be said to be indefensible. Indefensible is defined as "incapable of being maintained as right or valid" or "incapable of being justified or excused." Webster's Third New International Dictionary, Unabridged 1147 (1993). Thus, in a case such as *Bouie*, where a court interprets a statute in a surprising manner that has little in the way of legal support, the interpretation could not be applied retroactively. Our decision in *Burlison* was not such a case.

 The basis of the *Burlison* decision was the plain language of § 28-304. We recognized in *Burlison* that it was improper to read the element of malice into that statute. In Nebraska, all crimes are statutory, and no act is criminal unless the Legislature has in express terms declared it to be so. *State v. Burnett*, 254 Neb. 771, 579 N.W.2d 513 (1998); *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). See *State v. Burlison, supra*. It is not within the province of the courts to read a meaning into a statute that is not there, nor read anything direct and plain out of a statute. *State v. Burlison, supra*; *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). Thus, as we stated in *Burlison*, our prior decisions interpreting § 28-304 to include malice as a necessary element of the crime of second degree murder were clearly erroneous. Our decision in *Burlison* was in no manner indefensible.

Furthermore, our decision in *Burlison* was not entirely unexpected. Although *Burlison* overruled a line of cases, the prior cases were not without obvious disagreement. Further, this court's interpretation of § 28-304 before *Burlison* was in direct

contradiction to the plain meaning of the statute. But regardless of whether the *Burlison* decision was or was not unexpected, it certainly was not indefensible. Thus, under the test set out in *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001), a retroactive application of *Burlison* does not violate due process.

■ Redmond contends that we should continue to apply ex post facto principles to retroactive judicial interpretations of a statute. In particular, Redmond asks that we do this under the Nebraska Constitution. We decline to do so. We hold that our interpretation of § 28-304 in *Burlison* may be applied retroactively to a criminal act that occurred before *Burlison* was decided.

SUFFICIENCY OF EVIDENCE FOR SECOND DEGREE MURDER

Redmond contends that the evidence was insufficient to convict him of second degree murder because there was no evidence that he intentionally shot Clinton. In particular, Redmond argues that the location of the bullet wound in Clinton's right shoulder blade is consistent with the theory that Clinton was shot as he was throwing a punch at Redmond and when Redmond was holding the handgun in his left hand.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001); *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001).

As a factual finding, the district court concluded that Clinton was shot in the back, indicating that the shooting did not occur as part of the struggle between Redmond and Clinton. The district court also found that Redmond's intent was evidenced by the fact that following the shooting, he fired more shots and entered the courthouse, instead of tending to Clinton's wounds. We further note that the bullet wound is located on the bottom left of the right shoulder blade. Thus, the wound is closer to the center of the back than it is to the right side. Further, the evidence at trial did not clearly establish that Redmond held the weapon in his left hand. Under these circumstances, a rational trier of fact could have found the element of intent beyond a

reasonable doubt. We determine that the evidence was sufficient to convict Redmond of second degree murder.

### SUFFICIENCY OF EVIDENCE FOR USE OF
### WEAPON TO COMMIT FELONY

Redmond next argues that the evidence was insufficient to convict him of use of a weapon to commit a felony when he was convicted of second degree murder but was charged with first degree murder.

The information stated that Redmond "did use a firearm, to commit a felony which may be prosecuted in a court of this state, to-wit: Murder in the First Degree." We read the reference to first degree murder to be an example of a felony upon which the use of a weapon charge might be based, and not as the exclusive felony providing the basis for the charge. The information charged Redmond with use of a weapon to commit a felony. Redmond was indeed convicted of a felony. We determine that this assignment of error is without merit.

## CONCLUSION

We conclude that our interpretation of § 28-304 in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), may be applied retroactively to a criminal act that occurred before *Burlison* was decided. We further conclude that there was sufficient evidence to convict Redmond of second degree murder and use of a weapon to commit a felony. Accordingly, we affirm.

AFFIRMED.

WRIGHT, J., concurring.

Redmond assigns as error that the district court erred in failing to include malice as an element of second degree murder and in finding there was sufficient evidence to convict him of second degree murder. Neither assignment of error has any merit.

Redmond was charged with first degree murder and was convicted by the district court of second degree murder. The district court found that Redmond shot Clinton intentionally but without premeditation. Redmond could not have been convicted of manslaughter because the killing was intentional. See *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

It makes no difference whether *State v. Burlison, supra,* is retroactively applied. For purposes of Redmond's argument, even if malice were an element of second degree murder, the State has proved malice beyond a reasonable doubt. Malice is defined as the intentional doing of an unlawful act without just cause or excuse. See, *State v. Hall,* 249 Neb. 376, 543 N.W.2d 462 (1996) (Wright, J., dissenting), *overruled on other grounds, State v. Burlison, supra; State v. Dean,* 246 Neb. 869, 523 N.W.2d 681 (1994), *overruled on other grounds, State v. Burlison, supra.* The unlawful act was the killing of Clinton. Because the district court found that Redmond killed Clinton intentionally but without premeditation, the only crime for which Redmond could have been convicted was second degree murder. The evidence was sufficient to support this conviction.