Bruce Caton, appellant, v.
State of Nebraska, appellee.

___ N.W.2d ___

Filed October 2, 2015.    No. S-14-1144.

1. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.
2. **Habeas Corpus.** The habeas corpus writ provides illegally detained prisoners with a mechanism for challenging the legality of a person's detention, imprisonment, or custodial deprivation of liberty.
3. **Habeas Corpus: Probation and Parole.** A parolee may seek relief through Nebraska's habeas corpus statute.
4. **Constitutional Law: Criminal Law: Statutes: Sentences.** The ex post facto prohibitions found in the Ex Post Facto Clauses of U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, forbid Congress and the states from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed.
5. **Constitutional Law: Judgments.** The Ex Post Facto Clauses do not concern judicial decisions.
6. **Constitutional Law: Judgments: Due Process.** Limitations on ex post facto judicial decisionmaking are inherent in the notion of due process, and retroactive judicial decisionmaking may be analyzed in accordance with the more basic and general principle of fair warning under the Due Process Clause.
7. **Judgments: Due Process.** Under the Due Process Clause, the question is whether the judicial decision being applied retroactively is both unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.
8. **Sentences.** Good time reductions under Neb. Rev. Stat. § 83-1,107 (Reissue 2014) do not apply to mandatory minimum sentences.

9. \_\_\_\_. Logically, a defendant must serve the mandatory minimum portion of a sentence before earning good time credit toward the maximum portion of the sentence.

10. \_\_\_\_. A defendant is unable to earn good time credit against either the minimum or maximum sentence until the defendant has served the mandatory minimum sentence.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed.

Bruce Caton, pro se.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ., and Moore, Chief Judge, and Riedmann, Judge.

McCormack, J.
## NATURE OF CASE

Bruce Caton was discharged from the custody of the Department of Correctional Services (Department) upon serving 10 years of his sentence. Caton was later taken back into custody after the Department realized that the mandatory discharge date had been erroneously calculated by giving good time credit on the 10-year mandatory minimum term of Caton's sentence. Caton filed a petition for a writ of habeas corpus, challenging the Department's continuing exercise of custody. Caton alleged that in calculating his mandatory discharge date, the Department's reliance on *State v. Castillas*[1] violated the prohibition against ex post facto laws. The district court granted summary judgment for the State. We affirm.

---

[1] *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

## BACKGROUND

Caton was sentenced on October 27, 2004, to 10 to 20 years' imprisonment with 363 days' credit for time served, after being convicted of burglary with habitual criminal enhancement. An order of commitment into the custody of the Department was signed by the clerk of the district court that same date. The date Caton committed the acts that led to this conviction is not in the record. The 10-year minimum sentence was mandatory under the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 1995).

The State discharged Caton after erroneously calculating good time on the 10-year mandatory minimum sentence. The correct mandatory discharge date will be upon serving 15 years of his sentence. Approximately 8 months after Caton's erroneous discharge, Caton was brought back into the Department's custody after the district court granted the State's motion to secure an arrest warrant. Caton was immediately released on parole. An affidavit by the records manager of the Department reflects that the Department has for purposes of his mandatory discharge date given Caton credit for the time spent mistakenly at liberty.

Caton filed a petition for a writ of habeas corpus. Caton argued that in calculating his discharge date, the Department's reliance on *Castillas*, in which we discussed how discharge and parole eligibility dates should be calculated under the relevant good time statutes, violated the prohibition against ex post facto laws.[2] The court granted the State's motion for summary judgment. Caton appeals.

## ASSIGNMENTS OF ERROR

Caton assigns as error: (1) "Due Process cannot be refused on the basis of a person's possible choice to flee jurisdiction, or a right to appeal," and (2) a "Nebraska Supreme Court

---

[2] *Id.*

opinion issued in 2002 cannot 'foretell' an opinion of 2013 where the meaning of a law is altered to limit good time credit causing arrest and re-incarceration for 5 more years, 8 months after discharge from sentence for crime commit[t]ed 9½ years before 2013 definition."

## STANDARD OF REVIEW

[1] When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.[3]

## ANALYSIS

[2] The habeas corpus writ provides illegally detained prisoners with a mechanism for challenging the legality of a person's detention, imprisonment, or custodial deprivation of liberty.[4] The State agrees that habeas corpus was the proper procedure for Caton to challenge the Department's exercise of custody.

[3] Although Caton was a parolee, we have held in other contexts that a parolee is "in custody under sentence." In *State v. Thomas*,[5] we reasoned:

[A parolee] is subject to revocation of his parole and return to prison if he violates the terms of his parole in any way. . . . As a condition of parole he may be required to be employed, remain in a certain geographical area unless granted written permission to leave the area, report to his parole officer, submit to certain medical or psychological treatment, refrain from associating with certain persons, or abide by any other conditions determined by the Board of Parole. [A parolee] does not possess the

---

[3] *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015).

[4] *Anderson v. Houston*, 274 Neb. 916, 744 N.W.2d 410 (2008); *Tyler v. Houston*, 273 Neb. 100, 728 N.W.2d 549 (2007). See, also, Neb. Rev. Stat. § 29-2801 (Reissue 2008).

[5] *State v. Thomas*, 236 Neb. 553, 557, 462 N.W.2d 862, 866 (1990) (citations omitted).

same degree of liberty and freedom as a citizen not under the jurisdiction of the Board of Parole.

We also noted in *Thomas* that the U.S. Supreme Court, in *Jones v. Cunningham*,[6] held that a parolee is "'in custody'" for purposes of the federal habeas corpus statute.[7] The majority view in other jurisdictions is that parole is a sufficient restraint of liberty as will entitle a petitioner to relief.[8] We similarly hold here that a parolee may seek relief through our habeas corpus statute.

Caton argues that the Department's application of our opinion in *Castillas*, explaining how good time should be calculated for mandatory minimum sentences,[9] violated the prohibition against ex post facto laws, because such interpretation was "'[u]nforeseeable.'"[10] Caton makes no other fully articulated argument that was both assigned as error and

---

[6] *Jones v. Cunningham*, 371 U.S. 236, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963).

[7] *Id.*, 371 U.S. at 238, quoting 28 U.S.C. § 2241 (1958).

[8] See, *Mainali v. Virginia*, 873 F. Supp. 2d 748 (E.D. Va. 2012); *Banks v. Gonzales*, 496 F. Supp. 2d 146 (D.D.C. 2007); *In re Wessley W.*, 125 Cal. App. 3d 240, 181 Cal. Rptr. 401 (1981); *Schooley v. Wilson*, 150 Colo. 483, 374 P.2d 353 (1962); *Carnley v. Cochran*, 123 So. 2d 249 (Fla. 1960), *reversed on other grounds* 369 U.S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962); *In re Application of Horst*, 270 Kan. 510, 14 P.3d 1162 (2000); *Staples v. State*, 274 A.2d 715 (Me. 1971); *State ex rel. Atkinson v. Tahash*, 274 Minn. 65, 142 N.W.2d 294 (1966); *State v. Gray*, 406 S.W.2d 580 (Mo. 1966); *Garnick v. Miller*, 81 Nev. 372, 403 P.2d 850 (1965); *Com. ex rel. Ensor v. Cummings*, 420 Pa. 23, 215 A.2d 651 (1966); *Ex parte Elliott*, 746 S.W.2d 762 (Tex. Crim. 1988); *Monohan v. Burdman*, 84 Wash. 2d 922, 530 P.2d 334 (1975). But see, *Williams v. State*, 42 Ala. App. 140, 155 So. 2d 322 (1963); *Sorrow v. Vickery*, 228 Ga. 191, 184 S.E.2d 462 (1971); *People ex rel. Williams v. Morris*, 44 Ill. App. 3d 39, 357 N.E.2d 851, 2 Ill. Dec. 631 (1976); *McGloin v. Warden*, 215 Md. 630, 137 A.2d 659 (1958); *State v. Ballard*, 15 N.J. Super. 417, 83 A.2d 539 (1951); *People ex rel. Ali v. Sperbeck*, 66 A.D.2d 827, 411 N.Y.S.2d 344 (1978); *Ex parte Davis*, 11 Okla. Crim. 403, 146 P. 1085 (1915); *White v. Gladden*, 209 Or. 53, 303 P.2d 226 (1956).

[9] *State v. Castillas, supra* note 1.

[10] Brief for appellant at 10.

preserved below, challenging the current custodial deprivation of liberty.[11]

[4] The Ex Post Facto Clause provides simply that "[n]o State shall . . . pass any . . . ex post facto law."[12] The ex post facto prohibitions found in the Ex Post Facto Clauses of U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, forbid Congress and the states from enacting any law """"which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.""'"[13] Stated another way, the Ex Post Facto Clauses """"forbid[] the application of any new punitive measure to a crime already consummated.""'"[14]

The Ex Post Facto Clauses ensure that individuals have fair warning of applicable laws, and the clauses guard against vindictive legislative action.[15] Even where these concerns are not directly implicated, the clauses also safeguard """"a fundamental fairness interest . . . in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.""'"[16]

In *Weaver v. Graham*,[17] the U.S. Supreme Court held that it is a violation of the prohibition against ex post facto laws to apply a new formula for calculating future good time credits

---

[11] See, *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013); *State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999).

[12] U.S. Const. art. I, § 10, cl. 1.

[13] *Shepard v. Houston*, 289 Neb. 399, 410, 855 N.W.2d 559, 568 (2014), quoting *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

[14] *Id.*, quoting *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995).

[15] *Shepard v. Houston, supra* note 13.

[16] *Id.* at 410, 855 N.W.2d at 568, quoting *Peugh v. U.S.*, ___ U.S. ___, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013).

[17] *Weaver v. Graham, supra* note 13.

to a person incarcerated for a crime committed before the new law was passed.

[5] However, Caton challenges the alleged retroactive application of our decision in *Castillas* interpreting our good time statutes, not any change to the statutes themselves. Technically, the Ex Post Facto Clauses do not concern judicial decisions. "As the text of the [Ex Post Facto] Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'"[18]

[6,7] Nevertheless, limitations on ex post facto judicial decisionmaking are inherent in the notion of due process, and retroactive judicial decisionmaking may be analyzed in accordance with the more basic and general principle of fair warning under the Due Process Clause.[19] Under the Due Process Clause, the question is whether the judicial decision being applied retroactively is both unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.[20]

We have explained that indefensible in this context means "'incapable of being justified or excused.'"[21] Thus, "where a court interprets a statute in a surprising manner that has little in the way of legal support, the interpretation could not be applied retroactively."[22]

Neb. Rev. Stat. § 83-1,107(2)(a) (Reissue 2014) concerns calculation of the mandatory discharge date in light of good time. Under § 83-1,107(2)(a), a prisoner's term of confinement shall be reduced by 6 months for each year of the committed offender's term and pro rata for any part thereof

---

[18] *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001).

[19] See, *id.*; *State v. Redmond*, 262 Neb. 411, 631 N.W.2d 501 (2001).

[20] *State v. Redmond, supra* note 19.

[21] *Id*. at 420, 631 N.W.2d at 508.

[22] *Id.*

which is less than a year. Under § 83-1,107(2)(c), the total reductions under § 83-1,107(2) shall be credited from the date of sentence and shall be deducted from the maximum term, to determine the date when discharge from the custody of the state becomes mandatory. Also, under Neb. Rev. Stat. § 83-1,108 (Reissue 2014), a parolee's parole term shall be reduced by the Board of Parole for good conduct while under parole by 10 days for each month. Such reduction shall be deducted from the maximum term, less good time granted pursuant to § 83-1,107, to determine the date when discharge from parole becomes mandatory.

Neb. Rev. Stat. § 83-1,110 (Reissue 2014) states in relevant part that every committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence as provided in §§ 83-1,107 and 83-1,108, but that *"[n]o such reduction of sentence shall be applied to any sentence imposing a mandatory minimum term."* (Emphasis supplied.) Section 83-1,110 is the only statute that specifically refers to the relationship between any statutory reductions and a mandatory minimum term.

[8-10] We said in *Castillas* that § 83-1,110 makes clear that good time reductions under § 83-1,107 do not apply to mandatory minimum sentences.[23] We further explained that, logically, a defendant must serve the mandatory minimum portion of a sentence before earning good time credit toward the maximum portion of the sentence.[24] Thus, a defendant is unable to earn good time credit against either the minimum or maximum sentence until the defendant has served the mandatory minimum sentence.[25] We set forth the following rule of calculation:

[T]he parole eligibility date is determined by subtracting the mandatory minimum sentence from the court's

---

[23] *State v. Castillas, supra* note 1.

[24] *Id.*

[25] *Id.*

minimum sentence, halving the difference, and adding that difference to the mandatory minimum. Similarly, the mandatory discharge date is computed by subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference to the mandatory minimum.[26]

Before *Castillas*, we explained in *Johnson v. Kenney*[27] that while § 83-1,110 does not specifically refer to the mandatory discharge date, logic and the legislative history dictate that calculations under the statutory good time scheme ought not result in a discharge date that is before the inmate's parole eligibility date. We said further that "the intent of habitual criminal sentencing is thwarted if good time credit is applied to the maximum term of the sentence before the mandatory minimum sentence has been served. The minimum portion of the sentence would have no meaning."[28]

It is unclear from the record whether *Johnson* predates the conduct for which Caton is currently serving his sentence. Regardless, our reading of the good time statutes in *Johnson* and *Castillas* was neither surprising nor legally unsupportable. Accordingly, the Department did not violate Caton's right to due process when it calculated his mandatory discharge date in accordance with the calculation method set forth in *Castillas*.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of the State in Caton's action for habeas corpus relief.

AFFIRMED.

HEAVICAN, C.J., not participating.

---

[26] *Id*. at 190-91, 826 N.W.2d at 268. See, also, *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012).

[27] *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002).

[28] *Id*. at 51, 654 N.W.2d at 194.