Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2022 08:07 AM CDT

Graylin Gray, appellant, v. Scott R. Frakes,
director, Nebraska Department of Correctional
Services, and Kevin J. Wilken, administrative
assistant III, in their official
capacities, appellees.

___ N.W.2d ___

Filed April 22, 2022.    No. S-21-257.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a
   motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing
   an order dismissing a complaint, the appellate court accepts as true
   all facts which are well pled and the proper and reasonable inferences
   of law and fact which may be drawn therefrom, but not the plain-
   tiff's conclusion.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of
   law that an appellate court resolves independently of the trial court.

Petition for further review from the Court of Appeals,
Pirtle, Chief Judge, and Moore and Bishop, Judges, on
appeal thereto from the District Court for Johnson County,
James E. Doyle IV, Judge. Judgment of Court of Appeals
affirmed.

Graylin Gray, pro se.

Douglas J. Peterson, Attorney General, James D. Smith, and
Charles E. Chamberlin for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
and Papik, JJ.

Papik, J.

Graylin Gray, an inmate serving a term of incarceration in the custody of the Nebraska Department of Correctional Services (DCS), sought a writ of mandamus in the district court. He claimed that DCS incorrectly calculated his mandatory release date. The district court dismissed Gray's amended petition, and Gray appealed. The Nebraska Court of Appeals summarily affirmed, and we granted Gray's petition for further review. Gray contends recalculation of his mandatory release date is required, because in sentencing him as a habitual criminal on two felony counts, the sentencing court did not pronounce that it was imposing "mandatory minimum" sentences. We find that no specific pronouncement of a "mandatory minimum" sentence is required for DCS to treat the sentence as such in calculating an inmate's mandatory discharge date and therefore affirm.

## BACKGROUND

*Convictions and Sentences.*

Gray was convicted in 2007 of unlawful possession of four or more financial transaction devices and unlawful circulation of financial transaction devices in the first degree. Following enhancement proceedings, Gray was found to be a habitual criminal and sentenced to 10 to 20 years' imprisonment on each count, to be served consecutively.

The Court of Appeals affirmed Gray's convictions and sentences on direct appeal in an unpublished memorandum opinion filed on March 12, 2009, in case No. A-08-336. We denied further review.

*Mandamus Action Underlying Present Appeal.*

In the years after his direct appeal, Gray made numerous unsuccessful challenges to the convictions and sentences at issue. See, e.g., *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015). In the matter now before us, Gray, representing himself, petitioned the district court for a writ of mandamus

requiring DCS officials to change his mandatory discharge date to April 2026. Gray asserted in his verified amended petition that DCS had impermissibly modified his sentence by setting his mandatory discharge date for April 2036.

Gray attached a copy of the district court's written sentencing order to his amended petition. In the written sentencing order, the district court stated that it was sentencing Gray to "a period of not less than 10 years nor more than 20 years" for each of the two counts, to be served consecutively. The written sentencing order did not contain a specific reference to its habitual criminal finding or a mandatory minimum sentence.

Gray's petition also referred to his sentencing hearing. At the sentencing hearing, the district court mentioned its finding that Gray was a habitual criminal. In its oral pronouncement of Gray's sentences, the district court ordered Gray imprisoned for "a period of not less than 10 years nor more than 20 years" for each of the two counts, to be served consecutively.

The district court later stated, "[Y]ou must serve 20 years, minus credit for any time previously served, towards parole eligibility and 20 years, minus credit for any time previously served, towards mandatory discharge. You are given credit for 676 days previously served." The prosecutor then asked whether Gray had to serve 10 years before good time began to accrue. The district court responded, "It was my understanding that you're not parole eligible on a mandatory minimum sentence of 10 years on each count." Gray agreed, "You got to do a mandatory." The district court also stated, "[I]t's my understanding you have to serve a minimum of 20 years before you would be considered for discharge." Gray again agreed, "Correct."

DCS records and correspondence attached to Gray's amended petition reflect that DCS initially set Gray's mandatory release date for April 2026, but later concluded that Gray must serve 30 years before mandatory discharge, minus credit for 676 days served, and set his mandatory discharge date

for April 2036. In correspondence with Gray, DCS explained that Gray was sentenced to two consecutive 10-to-20-year terms, with each count carrying a habitual criminal enhancement of a 10-year mandatory term, and that it computed his mandatory discharge date based on *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015). In that case, we held that a defendant must serve the mandatory minimum portion of a sentence before earning good time credit toward the maximum portion and explained, "[T]he mandatory discharge date is computed by subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference to the mandatory minimum." *Castillas*, 285 Neb. at 191, 826 N.W.2d at 268. See, also, *Caton v. State*, 291 Neb. 939, 869 N.W.2d 911 (2015) (quoting *Castillas, supra*).

On its own motion, the district court issued an order directing the parties to show cause why Gray's mandamus action should not be dismissed with prejudice for failure to state a cause of action, in part because DCS had properly calculated the mandatory release date pursuant to *Caton, supra*, and *Castillas, supra*. Gray responded that *Caton* and *Castillas* did not apply because he was not sentenced to two *mandatory* minimum sentences of 10 years each. The district court disagreed and dismissed Gray's amended petition, citing Neb. Ct. R. Pldg. § 6-1112(b)(6).

Gray appealed. His brief assigned in part that the district court erred in dismissing his petition based on its finding that the April 2036 mandatory release date was accurate. DCS filed a motion for summary affirmance. In a minute entry, the Court of Appeals sustained DCS' motion to summarily affirm the district court's dismissal, citing *Caton* for the above-mentioned principles.

We granted Gray's petition for further review and ordered the matter submitted without oral argument.

## ASSIGNMENT OF ERROR

Gray assigns that the Court of Appeals erred in summarily affirming the district court's order that dismissed his amended petition for a writ of mandamus.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo. *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013). When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Id.*

[3] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *Id.*

## ANALYSIS

*Procedure.*

The district court determined that Gray's amended petition failed to state a claim and dismissed it pursuant to § 6-1112(b)(6). Before turning to Gray's argument in support of his petition for further review, we sound a note of caution regarding the procedure employed in the district court.

Although we have previously reviewed dismissals of mandamus actions based on § 6-1112(b)(6), see, e.g., *State ex rel. Jacob v. Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006), and a commentator has written that the sufficiency of the petition to obtain a writ of mandamus may be challenged under that provision, see John P. Lenich, Nebraska Civil Procedure § 20:11 (2022), the statutes that set forth procedures governing mandamus actions do not appear to contemplate the evaluation of petitions for mandamus relief under § 6-1112(b)(6). See Neb. Rev. Stat. § 25-2156 et seq. (Reissue 2016). Moreover, we recently concluded in another context that motions under § 6-1112(b) should play no role where the governing procedures were set forth by statute and such motions were not

mentioned. See *Maria T. v. Jeremy S.*, 300 Neb. 563, 915 N.W.2d 441 (2018) (explaining that § 6-1112(b) should play no role in child custody habeas proceeding; that procedure set forth in habeas statutes governs; and that habeas statutes do not describe by what means, if any, respondent may challenge sufficiency of relator's application).

In this case, Gray does not contend that the district court erred by evaluating his amended petition under § 6-1112(b)(6); rather, he only disagrees with the conclusion the district court reached in conducting that analysis. We therefore limit our review today to that issue.

*Merits.*

On further review, Gray argues that he is entitled to a writ of mandamus, because DCS has incorrectly calculated his mandatory discharge date. Gray's petition for further review rests solely on the contention that he was not sentenced to mandatory minimum terms and that therefore, the principles articulated in *Caton* and *Castillas* do not govern his mandatory discharge date.

Gray does not and could not dispute that if he is subject to mandatory minimum terms, DCS' calculation of his mandatory discharge date is accurate. See, *Caton, supra*; *Castillas, supra*. Consequently, the only issue that requires discussion is a narrow one: whether DCS was correct to treat Gray's sentences as mandatory minimum terms in setting his mandatory discharge date. We conclude that it was. As we will explain, in imposing a sentence subject to a habitual criminal enhancement, a court is not required to pronounce that the sentence is the "mandatory minimum" for DCS to treat it as such in calculating an inmate's mandatory discharge date.

Gray was convicted of two felony counts. After an enhancement hearing, the district court determined Gray to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). At that time and still today, "the court shall sentence such person . . . as a habitual criminal." § 29-2221(2).

Section 29-2221(1) directs that a person convicted of a felony and deemed to be a habitual criminal "shall be punished by imprisonment in [a DCS] adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years."

The district court sentenced Gray to 10 to 20 years on each count, to be served consecutively. Gray is correct that the district court's written sentencing order did not designate a "mandatory minimum" sentence. The phrase did come up at the sentencing hearing, but it appears to have been part of the truth-in-sentencing advisement, not the sentences, and the meaning of a sentence is, as a matter of law, determined by the contents of the sentence itself. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015). See, also, Neb. Rev. Stat. § 29-2204 (Reissue 2016) (terms of imprisonment prevail over any conflict with truth-in-sentencing advisements). But even if the sentences imposed by the district court made no mention of a "mandatory minimum" sentence for a habitual criminal, we conclude that they were consistent with the district court's statutory obligations.

At the time of Gray's convictions and sentencing, and relevant to the felonies at issue here, § 29-2204(1)(a)(ii)(A) (Reissue 2008) provided, "[I]n imposing an indeterminate sentence upon an offender the court shall . . . [f]ix the minimum and maximum limits of the sentence to be served within the limits provided by law." See 2002 Neb. Laws L.B. 1, § 8, 3d Spec. Sess. See, also, § 29-2204(1) (Reissue 2016) (current version containing virtually same language). This language plainly obligated the sentencing court to "fix" the minimum and maximum terms of incarceration a defendant is ordered to serve, but we do not understand it to have required the court to also specify as part of the sentences whether a "mandatory minimum" applies.

We find confirmation of this understanding in our opinion in *Russell, supra*. Therein, we explained that when the phrase "mandatory minimum" is used as a term of art, as it is in the

habitual criminal statute, it refers to certain consequences regarding probation and parole set by the Legislature for that sentence. But we distinguished this concept from the minimum term of years that a sentencing court is statutorily authorized to impose. We also explained that even when "mandatory minimum" is used as a term of art, it is the minimum term of years provided by statute that affects the range of penalties that a sentencing court may impose, not the word "mandatory."

In this case, the district court complied with § 29-2204, as we have explained it, by fixing the minimum and maximum terms of Gray's sentences within the statutory range for a habitual criminal. Section 29-2204 did not require the district court to also pronounce any "mandatory minimum" as part of the sentences.

But the word "mandatory" in § 29-2221 is not without effect. Once Gray was committed to the custody of DCS, it became DCS' responsibility to implement his sentences, and we have held that mandatory minimum sentences under § 29-2221 carry consequences in which DCS plays a role. See, *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017); *Caton v. State*, 291 Neb. 939, 869 N.W.2d 911 (2015). For instance, the offender cannot become eligible for parole until the mandatory minimum is served in full, and good time credits can be applied to the maximum term of an indeterminate sentence only after the offender serves the mandatory minimum. See, *Davis, supra*; *Caton, supra*; Neb. Rev. Stat. § 83-1,110 (Reissue 2014). It is DCS that manages information relevant to parole eligibility, as well as good time credits. See Neb. Rev. Stat. §§ 83-1,107 and 83-1,109 (Reissue 2014). And as we stated earlier, we have set forth how DCS should calculate an inmate's mandatory discharge date: By "subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference to the mandatory minimum." *State v. Castillas*, 285 Neb. 174, 191, 826 N.W.2d 255, 268 (2013), *disapproved on other grounds, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015). See, also, *Caton v. State, supra*.

In setting Gray's mandatory discharge date, DCS treated the low end of his sentences as mandatory minimums, as provided by law. As we have explained, when the district court found Gray to be a habitual criminal, § 29-2221 required that he be punished with a mandatory minimum term. In other words, Gray's minimum terms within the statutory range were mandatory minimum terms by operation of law, whether the district court specifically pronounced them to be mandatory minimum terms or not.

Under the circumstances here, we conclude that DCS was correct to treat Gray's sentences as mandatory minimums in calculating his mandatory discharge date. Accordingly, we find that the Court of Appeals did not err in summarily affirming the district court's dismissal of Gray's amended petition for a writ of mandamus.

## CONCLUSION

Finding no merit to the error alleged by Gray, we affirm the judgment of the Court of Appeals.

Affirmed.

Freudenberg, J., not participating.